**NOT FOR PUBLICATION**
**File Name: 06a0322n.06**
**Filed: May 8, 2006**

**NO. 04-1997**

**UNITED STATES COURT OF APPEALS**
**FOR THE SIXTH CIRCUIT**

UNITED STATES OF AMERICA,

      Plaintiff-Appellee,

v.

RAMON DIAZ,

      Defendant-Appellant.

ON APPEAL FROM THE
UNITED STATES DISTRICT
COURT FOR THE EASTERN
DISTRICT OF MICHIGAN

_____/

**BEFORE:**    **NORRIS, SUHRHEINRICH, and ROGERS, Circuit Judges.**

**SUHRHEINRICH, J.,** Defendant Ramon Diaz pleaded guilty to one count of aiding and

abetting the possession with intent to distribute 500 grams or more of cocaine, in violation of 21

U.S.C. § 841(a)(1). The district court sentenced him to a term of imprisonment of 61 months. On

appeal, Diaz challenges both his conviction and sentence. For the reasons that follow, we **AFFIRM**.

**I.**

On September 10, 2003, in Flint, Michigan, a joint team of officers from the Fraser Police

Department and the Genesee County Drug Unit executed a search warrant at the residential address

of Ernesto Aguilar. The officers recovered a total of four kilograms of cocaine.

Defendant Ramon Diaz, a resident of Chicago, was arrested shortly before the search warrant

was executed as he and Jose Bustos were leaving the Aguilar residence in a third-party's vehicle.

On September 17, 2003, Diaz was charged in a multiple count indictment with the illegal possession

and distribution of cocaine.

On March 19, 2004, Diaz pleaded guilty to the second count of the indictment for aiding and abetting the possession with intent to distribute 500 grams or more of cocaine. Diaz stipulated to having transported four kilograms of cocaine and also stipulated to a Sentencing Guidelines base offense level of 30. The plea agreement called for a sentence that would not exceed the midpoint of the "court-determined" Guidelines range. Worksheets attached to the plea agreement, which were labeled "Non-Binding Recommendations," suggested that Diaz should receive several reductions to his base offense level of 30 including: a 4-level reduction for his role as a minor participant, a 3-level reduction for acceptance and responsibility, and a 2-level reduction if he qualified for the "safety-valve" relief under U.S.S.G. § 2D1.1(b)(6).[1] The worksheets also indicated that failure to qualify for the safety-valve would trigger a mandatory minimum of 60 months, under 21 U.S.C. § 841(b)(1)(B).

In its presentence investigation report ("PSR"), the probation department found four prior criminal convictions attributable to Diaz, two of which scored one criminal history point each. Accordingly, the PSR recommended a Criminal History Category of II, and a resulting disqualification from safety valve relief under U.S.S.G. § 5C1.2(a). The district court calculated the Sentencing Guideline range to be 60 to 63 months. Based on the midpoint cap called for in the plea agreement, the court sentenced Diaz to a term of imprisonment of 61 months. At sentencing, Diaz

---

[1] To qualify for the "safety-valve" provision referenced in U.S.S.G. § 2D1.1(b)(6), a defendant must meet all five conditions of U.S.S.G. § 5C1.2(a), including the condition that "the defendant . . . not have more than 1 criminal history point, as determined under the sentencing guidelines." *Id.* § 5C1.2(a)(1). A qualifying defendant is entitled to a 2-level reduction in the offense level and may be sentenced without regard to an otherwise applicable statutory minimum.

made a timely objection to the court's assessment of the two criminal history points. Diaz raises six issues on appeal.[2] We address each in turn.

## II.

## A.

Diaz first asserts that the district court erred in sentencing him to a term of imprisonment for 61 months as opposed to the statutorily prescribed minimum of 60 months. Under *United States v. Booker*, 543 U.S. 220 (2005), federal sentences are reviewed for "reasonableness," *id.* at 261, and the U.S. Sentencing Guidelines are advisory only, *id.* at 245. In determining "reasonableness," this Court "consider[s] not only the length of the sentence but also the factors evaluated and the procedures employed by the district court in reaching its sentencing determination." *United States v. Webb* 403 F.3d 373, 383 (6th Cir. 2005). Whether a sentence is reasonable depends on an examination of the factors found in 18 U.S.C. § 3553(a). *Id.* Section 3553(a) asks the sentencing court to consider, inter alia, the nature and circumstances of the offense and the history and characteristics of the defendant; the need for the sentence to reflect the seriousness of the offense; the kinds of sentences available; consultation of the Sentencing Guidelines; and the need to avoid unwarranted sentencing disparities between defendants with similar records who have been found guilty of similar conduct. 18 U.S.C. § 3553(a)(1)-(4),(6). Furthermore, we have recently joined other circuits in "crediting sentences properly calculated under the Guidelines with a rebuttable presumption of reasonableness," as long as the Guidelines are not given overriding consideration to other § 3553(a) factors. *United States v. Williams*, 436 F.3d 706, 708 (6th Cir. 2006).

---

[2]Diaz does not argue on appeal that the district court erred in failing to treat the Sentencing Guidelines as advisory only. Indeed, that argument would at most reduce his sentence by one month.

Here, the district court sentenced Diaz within the appropriate range.[3] Thus, this Court presumes the sentence reasonable. Because the district court considered many of the § 3553(a) factors, and because the degree to which Diaz argues the sentence was unreasonable is one month, Diaz cannot overcome this presumption.

The district court specifically addressed "the seriousness of the offense" and Diaz's unstable history: "And just to summarize[,] you're before the Court for sentencing for the distribution of a large quantity of cocaine. You're an illegal alien . . . you've amassed a number of criminal convictions. You have a third grade education in Mexico. You have no verifiable work record at all." Moreover, the court did not afford the now advisory Guidelines any superseding consideration.

Diaz argues that his admission to prior convictions under aliases should have been afforded more weight in determining an appropriate sentence. However, Diaz was already extended a three-level reduction for admission of responsibility. In any event, the court used mostly extrinsic evidence to prove the existence of his prior convictions,[4] and his admissions only followed the probation officer's discovery of these facts.

In short, there is nothing in the record to indicate that the sentence imposed on Diaz was "unreasonable" in terms of "length, the factors considered, or the procedures employed by the

_____

[3] An offense level of 23 (a base level of 30 with a 4-level reduction for minimal participation and a 3-level reduction for admission; the 2-level reduction for safety valve qualification was eliminated) and a Criminal History Category of II resulted in a range of 51 to 63 months. Applying the statutory minimum of 60 months, the range became 60 to 63 months.

[4] The prior convictions were attributed to Diaz using fingerprint verification, photo identification, the Chicago Police Department's Identification Bureau records, and admissions by defendant Diaz himself during the presentence interview confirming that he had used these aliases in the past.

district court." *Webb*, 403 F.3d at 385. Therefore, we conclude the 61-month sentence was reasonable.

**B.**

Diaz also challenges his sentence as a contractual violation of his Rule 11 Plea Agreement. Diaz argues that the court was not required to follow the recommendations of the probation department, but could have instead fashioned the sentence based solely on the initial plea agreement.[5]

In *Santobello v. New York*, 404 U.S. 257 (1971), the Supreme Court stated, "when a plea rests in any significant degree on a promise or agreement of the prosecutor . . . such promise must be fulfilled." *Id.* at 262. Here, the written agreement expressly provided for a sentence "of no more than the mid-point of the sentencing guidelines range *that the court finds to be applicable*" (emphasis added). It also clearly stated that the net offense level and criminal history category, calculated in the worksheets attached to the plea agreement, were "Non-Binding Recommendation[s]" that the court was free to "reject" at its discretion. During Diaz's plea colloquy, the court reiterated this, stating, "Mr. Diaz, what that means is that even though you and [the] Government may have reached an understanding or an agreement as to what you're sentencing range is . . . nevertheless if I calculate that differently what I say in that regards controls." When asked by the court if he understood what this meant, Diaz replied in the affirmative.

Therefore, we conclude that the district court did not err in sentencing Diaz under his plea agreement.

**C.**

---

[5]The worksheets attached to the plea agreement anticipated a guidelines sentencing range of 37 to 46 months.

Next, Diaz claims that the probation department miscalculated his sentence. Specifically, Diaz argues that the finding of four kilograms of cocaine that resulted in a base offense level of 30 and the determination of his prior assault convictions were factual issues that, pursuant to *Apprendi v. New Jersey*, 530 U.S. 466 (2000) and *Blakely v. Washington*, 542 U.S. 296 (2004), had to be charged in the indictment and found by a jury beyond a reasonable doubt.

In *Booker*, the Supreme Court extended the holdings of both *Apprendi* and *Blakely* to federal sentencing. *See Booker,* 543 U.S. at 243-44. Implicit in the language of *Booker* is the Court's recognition that both "prior convictions" and "facts admitted by the defendant himself" fall outside the ambit of Sixth Amendment analysis.

These exceptions are plainly applicable to Diaz's challenge. First, Diaz admitted to possessing and transporting four kilograms of cocaine in his written plea agreement.[6] Diaz made the same admission in his plea colloquy. These written and oral admissions satisfy *Booker*'s Sixth Amendment requirements.

Diaz's second challenge involving his two criminal history points clearly falls under *Booker*'s "prior convictions" exception. In *Apprendi*, the Supreme Court emphasized that a trial court's factual findings regarding prior convictions do not implicate the Sixth Amendment. *See Apprendi*, 530 U.S. at 488. This Court has concluded that *Booker* implicitly adopted *Apprendi*'s understanding regarding prior convictions. *See United States v. Barnett*, 398 F.3d 516, 525 (6th Cir. 2005) (finding that "there is no language in *Booker* suggesting that the Supreme Court, as part of its remedial scheme adopted in that case, intended to alter the exception to *Apprendi* allowing

---

[6]"[Diaz] and codefendants . . . transported four kilograms of cocaine by motor vehicle from Chicago, Illinois to Flint, Michigan, on or about September 10, 2003, . . . and . . . they aided and assisted one another in so doing."

district courts to consider the fact and nature of prior convictions without submitting those issues to the jury"). The fact that Diaz's prior convictions were committed using an alias is of no consequence. A sentencing court "must be allowed to determine not only the 'fact of a prior conviction' but also those facts so 'intimately related' to the prior conviction to fall within the *Apprendi* exception." *See United States v. Carrillo-Beltran*, 424 F.3d 845, 848 (8th Cir. 2005) (quoting *United States v. Moore*, 401 F.3d 1220, 1225 (10th Cir. 2005)). The district court's finding that the prior assault convictions were attributable to Diaz falls within this principle.

Diaz apparently also challenges the sufficiency of the evidence to support the district court's findings relating to his prior convictions. However, the "fact" of Diaz's multiple prior convictions, committed while using an alias, was confirmed by incontrovertible evidence collected by the probation officer during the presentence investigation.[7]

In any event, none of Diaz's claims, if accepted, would alter the maximum sentence to which he is exposed. They would only affect the 60-month mandatory minimum. The Supreme Court and the Sixth Circuit have made clear that only exposure to a higher maximum sentence, not the triggering of a mandatory minimum, will necessarily affect a defendant's Sixth Amendment rights. *See Harris v. United States*, 536 U.S. 545, 563-68 (2002) (plurality opinion) (stating that *Apprendi* does not apply to an increased mandatory minimum sentence unless the triggering facts result in a

---

[7]The prior convictions were attributed to Diaz using fingerprint verification, photo identification, the Chicago Police Department's Identification Bureau records, and admissions by defendant Diaz himself during the presentence interview confirming that he had used these aliases in the past. Diaz contests his admissions because his attorney was not present at the presentence interview. However, this Court has concluded that the presentence interview is not a critical stage of the prosecution that requires the presence of counsel. *Unites States v. Tisdale*, 952 F.2d 934, 940 (6th Cir. 1992). "If a defendant requests the presence of counsel–or if an attorney indicates that his client is not to be interviewed without the attorney being there–the probation officer should honor the request." *Id.* Here, neither Diaz nor his attorney made such a request.

sentence in excess of an otherwise applicable statutory maximum); *id.* at 569-70 (Breyer, J., concurring); *accord United States. v. Copeland*, 321 F.3d 582, 602 n.5 (6th Cir. 2003) ("We read [the *Harris*] opinion to indicate that a majority of the Justices agree that *Apprendi* does not apply to mandatory minimum sentences, and thus consider that holding to be binding.").

Accordingly, we conclude that Diaz's Sixth Amendment rights were not violated.

## D.

Diaz next argues for the first time on appeal that his sentence and conviction should be vacated due to an alleged violation of article 36 of the Vienna Convention on Consular Relations ("VCCR"), which requires an arresting government to notify a foreign national who has been arrested, imprisoned, or taken into custody of his right to contact his consulate. The Vienna Convention on Consular Relations and the Optional Protocol Concerning the Compulsory Settlement of Disputes art. 36, April 24, 1963, 21 U.S.T. 77, 596 U.N.T.S. 262.

This argument is unavailing. In *United States v. Emuegbunam*, 268 F.3d 377 (6th Cir. 2001), this Court held that the VCCR does not confer individually enforceable rights upon defendants in federal prosecutions. *Id.* at 394. In its analysis, the court surveyed decisions of our sister circuits and concluded that as a general rule, international treaties do not create individual rights that may be enforced in the federal courts. *Id.* at 389-90. Thus, Diaz's VCCR claim is without merit.

## E.

Diaz also alleges a violation of his *Miranda* rights. Under *Miranda*, statements made during a defendant's "custodial interrogation" must be suppressed unless authorities advise the defendant of his or her rights. *See Miranda v. Arizona*, 384 U.S. 436, 476 (1966). The proper remedy for a

*Miranda* violation is suppression of the defendant's statements. Since Diaz made no statements to the police, his *Miranda* claim is irrelevant.

Finally, Diaz claims for the first time on appeal that he was deprived of his right to counsel of choice when his privately hired attorney absconded with fees without performing any legal services and was subsequently replaced by a court-appointed attorney. However, there are no facts in the record to support this claim. Diaz made no mention in the district court of any other attorney and expressed no dissatisfaction with his appointed counsel, who was present at his arraignment, plea hearing, and sentencing hearing. "'The right to assistance of counsel does not imply the absolute right to counsel of one's choice . . . [but] must be balanced against the need for the efficient and effective administration of criminal justice.'" *United States v. Krzyske*, 836 F.2d 1013, 1017 (6th Cir. 1988) (quoting *United States* v. *Weninger*, 624 F.2d 163, 166 (10th Cir. 1980)). Thus, this claim is also without merit.

### III.

For the foregoing reasons, the judgment of the district court is **AFFIRMED**.