NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 06a0679n.06
Filed: September 8, 2006

Nos. 05-1706, 05-1795

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | ON APPEAL FROM THE |
| Plaintiff-Appellee, | ) | WESTERN DISTRICT OF |
| | ) | MICHIGAN |
| v. | ) | |
| | ) | **O P I N I O N** |
| CHRISTOPHER STEVEN BOWEN, | ) | |
| OREANDA JABBAR HALL, | ) | |
| | ) | |
| Defendants-Appellants. | ) | |

**BEFORE:** **DAUGHTREY and COOK, Circuit Judges; COLLIER, District Judge.**[*]

**CURTIS L. COLLIER, District Judge.** This criminal appeal involves two defendants in a multidefendant drug trafficking conspiracy. Appellant Christopher Bowen ("Bowen") challenges the denial of his motion for judgment of acquittal under Fed. R. Crim. P. 29 for lack of evidence against him, and argues his sentence was imposed in violation of *United States v. Booker*, 543 U.S. 220, 125 S. Ct. 738, 160 L. Ed. 2d 621 (2005) and *Blakely v. Washington*, 542 U.S. 296, 124 S. Ct. 2531, 159 L. Ed. 2d 403 (2004). Appellant Oreanda Hall ("Hall") in his brief raised many issues, but conceded at oral argument all but one had been settled by this court in opinions contrary to his arguments; he now only challenges his sentence, arguing it was procedurally unreasonable.

---

[*]The Honorable Curtis L. Collier, Chief United States District Judge for the Eastern District of Tennessee, sitting by designation.

Because the evidence supporting Bowen's conviction, viewed in the light most favorable to the prosecution, was so strong "any rational trier of fact could have found the essential elements of the crime," we **AFFIRM** the district court's denial of his motion under Rule 29. *United States v. Clay*, 346 F.3d 173, 176 (6th Cir. 2003) (quoting *United States v. Jones*, 102 F.3d 804, 807 (6th Cir. 1996). Further, as the district court properly imposed a sentence according to the statutory mandatory minimum, we **AFFIRM** Bowen's sentence.

Additionally, the district court's sentencing of Hall was not procedurally unreasonable, and we **AFFIRM** his sentence.

## I. PROCEDURAL HISTORY

Both appellants, as well as three others, were indicted on one count of conspiracy to distribute more than 50 grams of a mixture or substance containing cocaine base ("crack") in violation of 21 U.S.C. §§ 846, 841(a)(1) and (b)(1)(A)(iii). Bowen was convicted of the charge after a jury trial. Bowen had three prior drug felony convictions of which the Government filed notice, therefore the mandatory statutory sentence for this offense was life in prison without the possibility of release under 21 U.S.C. § 841(b)(1)(A).

At his sentencing, Bowen did not lodge any objections, except to his guilt, and received the statutory mandatory sentence of life imprisonment without the possibility of release.

Hall pleaded guilty to violating 21 U.S.C. §§ 846, 841(a)(1) and (b)(1)(A)(iii) pursuant to a cooperation plea agreement. Hall had two prior felony drug convictions of which the Government filed notice, therefore the mandatory statutory sentence for this offense also was life in prison

without the possibility of release under 21 U.S.C. § 841(b)(1)(A). However, pursuant to Hall's plea agreement, the Government withdrew its notice of these convictions and agreed the sentencing range would be between 10 years and life in prison, the statutory range for a defendant guilty of this offense without any prior felony drug convictions. 21 U.S.C. § 841(b)(1)(A).

Prior to his sentencing, Hall submitted a memorandum stating objections to enhancements in the presentence report ("PSR") under the United States Sentencing Guidelines ("Guidelines"). Particularly, Hall challenged possession of a weapon under § 2D1.1(b)(1), being a leader in the offense under § 3B1.1(a), and reckless endangerment during evasion of arrest under § 3C1.2, and for the PSR's failure to subtract points for acceptance of responsibility under § 3E1.1. United States Sentencing Commission, Guidelines Manual (Nov. 2004). Hall also argued his criminal history category (V) overstated the seriousness of his prior record and the likelihood he would commit other crimes in the future. Hall requested a downward departure and a sentence of the statutory mandatory minimum under 21 U.S.C. § 841(b)(1)(A), 10 years, which was below the advisory Guidelines range.

During Hall's sentencing hearing, his attorney offered arguments in support of all the objections raised in his sentencing memorandum, and the Government responded in opposition to those objections. The district court then orally laid out its calculation of the Guidelines range, set out in detail its analysis on each of Hall's objections, with reference to testimony from co-defendant Bowen's trial, and denied all the objections except that on acceptance of responsibility, for which it subtracted two points. The district court determined Hall's offense level under the Guidelines was 43 and his criminal history category was V, yielding a sentencing range of 360 months to life

imprisonment.

The district court then again gave both parties an opportunity to present arguments. Hall's attorney noted although he had requested a downward departure from the Guidelines in his sentencing memorandum, because the Guidelines were advisory he was now requesting a below-Guidelines sentence. Hall's attorney pointed to the fact Hall's high criminal history category was based on just two convictions Hall committed when he was 17, which was 15 years prior to the sentencing hearing. He also noted Hall was remorseful and he had submitted numerous positive letters on Hall's behalf. He argued Hall had made the most of the time he had been incarcerated during the pendency of this action, and had no problems with violence or authority figures at the jail. Finally, he noted Hall had a supportive family. Hall addressed the court and stated he understood the seriousness of his offense and accepted responsibility for it, although he also expressed his unhappiness with others in the conspiracy who had cooperated with authorities for making him "look like the bad guy" and the probation officer who wrote his presentence report for asking him about pending charges against him. Finally, Hall asked for "another chance at life to be with my children and my family" (JA at 477).

The Government did not present additional argument at this time.

The district court before issuing its sentence noted the nature of the type of drug trafficking at issue in this case was dangerous and disruptive to communities, which was "ample reason for a long sentence" (JA at 478). The district court also stated its belief Hall was a leader of the conspiracy and enticed or manipulated Gill and Cannon to take part in the conspiracy, and that at least one of whom was involved in a romantic relationship at the time and may have been motivated

to participate in the conspiracy by love for him rather than for money. The court further found a long sentence would protect society by keeping Hall in prison so long he would be incapacitated from drug dealing upon his release. The court addressed the danger created by Hall's absconsion to North Carolina after he learned he had been indicted, and the danger to and actual injury of others during his evasion of arrest once officers found him there, as well as his possession of firearms during the offense. The court did concede the firearms were not used, but found they could have been used by Hall or others with whom he was dealing. The court finally noted "there are some redeeming qualities in the defendant, as evidenced by the letters that I've received on his behalf. And I also think that a sentence of a fixed term will give the defendant some incentive to be a better prisoner while incarcerated" (JA at 479).

The court sentenced Hall to 360 months imprisonment, which was the bottom of his range under the Guidelines, stating its primary reason for doing so was Hall's manipulation of others in the conspiracy, and utilization of his charm to entice others who were weak to get involved in the conspiracy.

Bowen and Hall's timely appeals followed.

## II. STANDARDS OF REVIEW

A challenge to the sufficiency of the evidence is reviewed *de novo*. *United States v. Tocco*, 200 F.3d 401, 424 (6th Cir. 2000). When the denial of a motion for judgment of acquittal for insufficiency of the evidence under Fed. R. Crim. P. 29 is challenged on appeal, "the standard of review is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime . . . ." *United States v.*

*Clay*, 346 F.3d 173, 176 (6th Cir. 2003) (quoting *United States v. Jones*, 102 F.3d 804, 807 (6th Cir.

1996). The appeals court "may conclude a conviction is supported by sufficient evidence even

though the circumstantial evidence does not remove every reasonable hypothesis except that of

guilt." *Id.*

Where a challenge to a sentence was not raised in the district court, the appeals court reviews

the district court's sentence for plain error. *United States v. Mahon*, 444 F.3d 530, 532 (6th Cir.

2006).

The plain-error inquiry is a four-step process under Rule 52(b) of the Federal Rules of

Criminal Procedure:

> First, we are to consider whether an error occurred in the district court. Absent any
> error, our inquiry is at an end. However, if an error occurred, we then consider if the
> error was plain. If it is, then we proceed to inquire whether the plain error affects
> substantial rights. Finally, even if all three factors exist, we must then consider
> whether to exercise our discretionary power under Rule 52(b), or in other words, we
> must decide whether the plain error affecting substantial rights seriously affected the
> fairness, integrity or public reputation of judicial proceedings.

*Id.* at 533 (quoting *United States v. Thomas*, 11 F.3d 620, 630 (6th Cir. 1993) (interpreting *United*

*States v. Olano*, 507 U.S. 725, 113 S. Ct. 1770, 123 L. Ed. 2d 508 (1993)); citing *United States v.*

*Jones*, 108 F.3d 668, 670 (6th Cir. 1997) (en banc)).

### III. ANALYSIS

**A.      Bowen**

**1.      Rule 29 Motion**

During his trial, Bowen very briefly moved for a judgment of acquittal under Fed. R. Crim.

P. 29 at the conclusion of the Government's case in chief. The district court succinctly analyzed the

evidence presented at that point, found the evidence showed Bowen was a member of the conspiracy charged, and denied the motion.

Bowen renewed his motion at the close of the Government's rebuttal proof (although only "perfunctorily," according to the Government's brief; this portion of the transcript was not submitted in the joint appendix for us to review). The motion was again denied.

Because Bowen presented a defense, he has waived any objection to the denial of the motion for judgment of acquittal he presented at the close of the Government's case in chief. *See United States v. Black*, 525 F.2d 668, 669 (6th Cir. 1975) (per curiam) (citing *United States v. Calderon*, 348 U.S. 160, 164, n. 1, 99 L. Ed. 202, 75 S. Ct. 186 (1954); *United States v. Ambrose*, 483 F.2d 742 (6th Cir. 1973) ("The rule is settled that when a defendant introduces evidence, he waives any objection to the denial of his motion to acquit at the close of the government's case.")); accord. *United States v. Wagner*, 382 F.3d 598, 611 (6th Cir. 2004). The appeals court may only review the second motion for judgment of acquittal, and must consider not only the evidence in the Government's case in chief, but "the record as a whole and not the sufficiency of the government's case in chief." *Id.*

Bowen was charged with conspiracy to distribute more than 50 grams of crack cocaine in violation of 21 U.S.C. §§ 846, 841(a)(1), and (b)(1)(A). To establish Bowen's guilt of this crime, the Government was required to prove (1) agreement to violate drug laws; (2) knowledge and intent to join the conspiracy; and (3) participation in the conspiracy. *United States v. Martinez*, 430 F.3d 317, 330 (6th Cir. 2006) (citing *United States v. Welch*, 97 F.3d 142, 148-49 (6th Cir. 1996)).

The agreement need not have been formal; a tacit understanding among the conspirators will suffice. *Id.* (quoting *United States v. Avery*, 128 F.3d 966, 970-71 (6th Cir. 1997)). The existence

-7-

of a conspiracy "may be inferred from circumstantial evidence that can reasonably be interpreted as participation in the common plan." *Id.* (quoting *Avery*, 128 F.3d at 971). Once a conspiracy is shown beyond a reasonable doubt, a defendant need only have a "slight" connection to it. *Id.* (quoting *Avery*, 128 F.3d at 971). Additionally, a defendant's knowledge of and participation in a conspiracy may be inferred from his conduct and established by circumstantial evidence. *Id.* (citing *United States v. Salgado*, 250 F.3d 438, 447 (6th Cir. 2001)).

**a.     Evidence**

We will briefly summarize the evidence presented at Bowen's trial.

**(i)     Police Officers and Crime Lab Specialists**

Several police officers with the Kalamazoo (Michigan) Valley Enforcement Team testified about an investigation of Oreanda Hall (a.k.a. "Renny") that started in 2001. Officers executed several search warrants on various residences in Kalamazoo. The first residence searched was Paketta Cannon's, at 1817 Shire Lane, where police found drug dealing paraphernalia (baggies, digital scales, etc.), crack cocaine, a gun, and documents with Hall's name on them. Several months later, in February 2002, police searched another residence belonging to Cannon, 1427 Concord Place, where they found handguns, ammunition, and a safe. Inside the safe were crack and powder cocaine, digital scales, and a receipt with the name "Renny" on it.

Also on this same day and into the early hours of the next morning, police searched a residence belonging to Marlo Gill, 113 Wall, where police found crack cocaine in a car parked in the driveway.

On the same day the search of the Wall address was completed, officers visited Bowen at his

probation officer's office. When asked where he was staying, Bowen started to say "536" but then said "504 Clinton", which was his mother's residence.

Later that same day, officers searched an apartment at 536 Bosker, and found drug dealing paraphernalia (Pyrex containers known to be used to cook powder cocaine into crack, digital scales, baggies, etc.), and a firearm and ammunition, as well as recent cable bills for service at the Bosker address in the name of Bowen and an income tax return for Bowen that claimed a state homestead property tax credit for renting a home at 536 Bosker. No cocaine was found at this address.

Officers testified they did not see Bowen at any of these addresses when they searched them, and only found the cable and tax documents related to him at the Bosker address, but no other documents relating to him at the other residences.

Several crime lab specialists also testified the substances seized from the residences were in fact crack and powder cocaine in various quantities.

**(ii)  Donald Gaddie**

Donald Gaddie, who at the time of his testimony was incarcerated on probation violation charges relating to an earlier cocaine delivery conviction and was cooperating with the Government, testified he knew Bowen because they had grown up in the same neighborhood in Kalamazoo. Hall was Gaddie's supplier of crack cocaine, which Gaddie then resold. Gaddie testified he pooled his money with Curtis Shepard to buy crack from Hall. Gaddie would see Bowen with Shepard, and said Bowen and Shepard shared an apartment on Bosker Street.

Gaddie spent time at the apartment on Bosker every day, where he saw Hall and Shepard, and saw Bowen cooking powder cocaine into crack, as well as crack being delivered and dealt out of the

apartment. Gaddie saw Cannon and "Marlo" (Gill) deliver drugs for Hall to this apartment. Gaddie saw Bowen and Shepard at the Bosker apartment every day, and he testified they both lived there. However, Gaddie did not himself conduct any drug business with Bowen.

Gaddie made phone calls while cooperating with the police to Shepard and Hall. He also gave information to the police about the residences of Cannon and Gill, as well as the Bosker Street residence, that led to the group of searches on those residences that occurred in February 2002.

Gaddie testified he was not charged in this case or a state case because of his cooperation with the police.

### (iii)   Paketta Cannon

Paketta Cannon, who was indicted in this case and at the time of her testimony had pleaded guilty to conspiracy to distribute more than 50 grams of crack cocaine but had not yet been sentenced, testified she was in a relationship with Hall during the time period of the conspiracy. Hall lived with her at the 1817 Shire Lane address, which he used for drug activities, when he was in Kalamazoo. She moved out of the Shire Lane address into an apartment at 1427 Concord Place, but took Hall's belongings with her to the Concord Place apartment, including the safe. Cannon would deliver drugs and collect payment for Hall to and from Shepard, including to the Bosker Street apartment, where she sometimes saw Bowen and Gaddie, but Cannon did not deliver drugs to Bowen. Cannon believed Bowen resided at the Bosker Street apartment.

Cannon also testified about all the co-defendants in this case, including Bowen, "running" to North Carolina after they learned they had been indicted and warrants for their arrests had been issued, where they resided with false identification for several months before being arrested.

**(iv)     T.D. Hill**

T.D. Hill, a Winston-Salem, North Carolina police officer, testified about arresting the co-defendants (Hall, Cannon, and Bowen) in North Carolina.  Hill specifically stated Hall fled from law enforcement and he had to chase him to arrest him.

**(v)     Marlo Gill**

Marlo Gill, who was indicted in this case and pleaded guilty to conspiracy and attempt to distribute more than 50 grams of crack cocaine and had been sentenced at the time of her testimony, testified she knew Hall.  After Cannon's house was raided in June 2001, Hall asked her to store his drugs at her house, first at an address on South Burdick, then at 113 Wall.  In addition to storing drugs, Gill delivered drugs and collected payment for Hall to and from Gaddie and Shepard.  Gill would see Shepard and Bowen when she delivered drugs to the Bosker Street apartment.  Gill also saw Bowen driving Shepard once when she delivered drugs to Shepard, and saw Bowen drive Hall around when she was transferring drugs or money with Hall.  Gill testified the drugs police found in the car in front of her house belonged to Hall.  Around midnight on the evening her home was searched, Gill went to the Bosker Street address and told Bowen, Shepard, and others her house had just been searched, and everyone scattered.  Gill did not ever deliver drugs to Bowen.

**(vi)     Curtis Shepard**

Curtis Shepard, who was indicted in this case and pleaded guilty to conspiracy to distribute more than 50 grams of crack cocaine and had been sentenced at the time of his testimony, testified he obtained drugs from Hall, which he then resold.  Shepard also testified he had known Bowen

since high school, and pooled his money to buy drugs with Gaddie and Bowen. Shepard also went

to Detroit to pick up drugs from Hall on several occasions, and Bowen went with him once. Bowen

lived with Shepard at the Bosker Street apartment, where he and Bowen would both cook powder

cocaine into crack, package crack for sale, and personally sell it to customers. Bowen rented the

apartment from his stepfather, Mac Jones[1]; Bowen and Shepard split the rent, but Bowen actually

paid the rent to Jones. Gill and Cannon sometimes delivered drugs to them and picked up money

they owed Hall. Shepard and Bowen were at the Bosker Street apartment when Gill came to tell

them her house had been searched, and everyone who was there left.

After the Bosker Street apartment was searched, Shepard and Bowen no longer lived or dealt

drugs there, but they continued to deal drugs together on a daily basis by using their cell phones.

Shepard had some trouble keeping the quantities he bought from Hall straight on cross

examination but clarified his statements on redirect.

**(vii)    Bowen's Witnesses**

Bowen put on several witnesses who testified in varying degrees of certainty that he lived

with his mother at 504 Clinton, not on Bosker Street, including Tamara Flowers, Bowen's probation

officer; Mcherlich ("Mack") Bowen, Bowen's half-brother who lived at 504 Clinton during the

relevant time period; Mirietta Irving, a neighbor of 504 Clinton who also drove Bowen to work on

occasion; Lee Buchanan, Bowen's stepfather; and Jean Buchanan-Bowen, Bowen's mother. Some

witnesses testified they knew Bowen had rented the Bosker Street residence, but did not believe he

---

[1]Although Shepard testified Mac Jones was Bowen's stepfather, Mr. Jones himself later testified he was actually Bowen's half-brother's father.

lived there. Some witnesses also testified Bowen had a full-time job during some portions of the alleged conspiracy period. Additionally, Mcherlich ("Mac") Jones, Bowen's half-brother's father, testified he rented the upstairs apartment in the Bosker Street property he owned to Bowen, the tenants in a downstairs apartment complained about the amount of traffic to the upstairs apartment, and Bowen told him he had subleased it to Shepard. Jones never personally checked on who was living in the apartment. Jones was prepared to evict whomever was living there, but the police searched the property before he had a chance, and whoever was living there vacated it.

The defense intended to call Hall to testify, but he indicated he would invoke his Fifth Amendment right if called, and the defense chose not to call him as a witness.[2] Bowen did not testify on his own behalf.

### b. Discussion

The evidence, viewed "in the light most favorable to the prosecution," was more than sufficient such that "any rational trier of fact could have found the essential elements of the crime . . . ." *Clay*, 346 F.3d at 176.

Co-defendant Donald Gaddie testified he saw Bowen and co-defendant Curtis Shepard cook powder cocaine into crack at the Bosker residence, and also that he saw Bowen sell cocaine. Co-defendants Paketta Cannon and Marlo Gill testified they delivered drugs for Hall to Shepard at the

---

[2]Bowen for the first time at oral argument requested a new trial in order to call Hall again to testify on Bowen's behalf, in the hopes he would not invoke his Fifth Amendment right now that he has been sentenced. The Government objected, noting this argument was not raised in Bowen's briefs.

This argument was waived by Bowen's failure to raise it at any time before oral argument. *See United States v. Bender*, 265 F.3d 464, 475 (6th Cir. 2001) (refusing to consider argument under *Apprendi v. New Jersey*, 530 U.S. 466, 147 L. Ed. 2d 435, 120 S. Ct. 2348 (2000) raised for first time at oral argument without any written submission regarding the merits of the argument).

Bosker residence, where they believed Bowen lived because they saw him there. Gill also testified she saw Bowen driving Shepard once when she delivered drugs to Shepard, and saw Bowen driving Hall around when she was transferring drugs or money with Hall.

The strongest witness against Bowen was Shepard, who testified he and Bowen lived together at the Bosker apartment, pooled their money to buy cocaine from Hall, drove to Detroit together once to obtain cocaine from Hall, cooked powder cocaine into crack together, packaged crack for sale, and personally sold crack and powder cocaine to customers, both from the Bosker residence and using their cell phones.

Government witnesses' testimony regarding Bowen's participation in the conspiracy was largely consistent, and they corroborated one another's testimony. None was seriously discredited on cross examination, except as to the fact they were testifying in hopes of reduced sentences for their participation in this same conspiracy. Further, documents found at the Bosker residence, including tax returns and cable bills in his name, linked Bowen to that residence and further corroborated the co-conspirators' testimony. Even though drugs were not found at the Bosker residence, officers did find two Pyrex containers consistent with the cooking of powder cocaine into crack, which witnesses testified they saw Bowen do at this residence. Bowen's witnesses testified largely about his living situation, rather than his lack of involvement in the drug trade. Even if all of Bowen's witnesses were believed and he did actually lay his head at his mother's house at night, they did nothing to refute the testimony he cooked crack and dealt drugs out of the Bosker apartment; several of his witnesses in fact testified they knew he had rented that apartment.

Bowen in his appeal brief argues "the only evidence of Bowen's involvement came from

alleged accomplices. Law enforcement found no drugs on Bowen nor at the apartment the Government alleges he lived in. There was scant evidence that Bowen even lived at the apartment; in fact, numerous witnesses testified that he lived elsewhere with his mother" (Bowen's brief at 14). These points were reiterated at oral argument. However, the testimony of an accomplice, even if uncorroborated, can sustain a guilty verdict. *United States v. Spears*, 49 F.3d 1136, 1140 (6th Cir. 1995), abrogated on other grounds, *United States v. Wells*, 519 U.S. 482, 137 L. Ed. 2d 107, 117 S. Ct. 921 (1997); see also *United States v. Stubbs*, 11 F.3d 632, 638 (6th Cir. 1993); *United States v. Lee*, 991 F.2d 343, 349 (6th Cir. 1993). *United States v. Gallo*, 763 F.2d 1504, 1518 (6th Cir. 1985), cert. denied sub nom. *Graewe v. United States*, 474 U.S. 1069, 88 L. Ed. 2d 800, 106 S. Ct. 828 (1986).

Bowen's accomplices' testimony was strong and was corroborated by one another's testimony and physical evidence found at the Bosker residence and others.

After viewing the evidence in the light most favorable to the prosecution, "any rational trier of fact could have found the essential elements of the crime . . . ." *United States v. Clay*, 346 F.3d 173, 176 (6th Cir. 2003). Therefore the denial of Bowen's motion for judgment of acquittal pursuant to Rule 29 is **AFFIRMED**.

**2.      Sentencing in Violation of *Booker* and *Blakely***

Bowen presented a lengthy argument in his brief regarding the illegality of his sentence in

light of the Supreme Court's holdings in *Booker*, 543 U.S. 220, and *Blakely*, 542 U.S. 296.[3]

However, he conceded at oral argument circuit precedent is contrary to his argument, and presented

it on the briefs merely to preserve it as an issue if this circuit's precedent changes.

Bowen in this argument asserts *Harris v. United States*, 536 U.S. 545, 122 S. Ct. 2406, 153

L. Ed. 2d 524 (2002), was implicitly overturned by the *Booker* and *Blakely* decisions. *Harris* held

the subsections in 18 U.S.C. § 924(c) that raise the statutory mandatory *minimum* sentence for

brandishing or discharging a firearm were sentencing factors that may be found by a preponderance

of the evidence, rather than elements of the crime that must be found by the higher beyond a

reasonable doubt standard, as they did not raise the statutory *maximum* for the crime. 536 U.S. at

557. Further, *Harris* held § 924(c), which allowed for a two-year increase in a defendant's minimum

sentence based on a judicial finding a weapon was brandished, did not violate the Fifth or Sixth

Amendments. *Id.* at 568. *Booker*, of course, held the Sixth Amendment prevents judges from

making factual determinations, other than the fact of a prior conviction, that increase a defendant's

sentence beyond the maximum authorized by the facts established by a plea of guilty or a jury verdict

under the mandatory United States Sentencing Guidelines, and its remedy was to hold the Guidelines

---

[3]In our own research in preparation for oral argument, we discovered this section of Bowen's brief, close to 20 pages, was copied almost verbatim from a published district court decision, *United States v. Malouf*, 377 F. Supp. 2d 315 (D. Mass. 2005) (Hall's Brief at 15-35). *Malouf* was not even cited by Bowen, much less was it notated in any way that would indicate the argument was lifted largely word for word from it. When our discovery of this outright plagiarism was called to the attention of Bowen's counsel, Robert Little, at oral argument, he did little to explain it, stating only he did not cite the case because it does not constitute binding precedent in this circuit, and he copied from it verbatim because he would lose the essence of the argument if he changed even one word.

While our legal system stands upon the building blocks of precedent, necessitating some amount of quotation or paraphrasing, citation to authority is absolutely required when language is borrowed.

We made it very clear to Mr. Little during oral argument this behavior is completely unacceptable and reiterate it here as an admonishment to all attorneys tempted to "cut and paste" helpful analysis into their briefs.

to be advisory rather than mandatory. 543 U.S. 220.

Bowen argues after *Booker*, *Harris's* distinction between mandatory minimums and statutory maximums is no longer good law, and the Sixth Amendment now requires the drug quantity (in excess of 50 grams) attributable to him and his status as a double felon to be submitted to the jury and determined beyond a reasonable doubt, as both of these findings raise the mandatory minimum sentence he faces.

The Ninth and Seventh Circuits and several district courts have explicitly held *Harris* was not overruled by *Booker* or *Blakely*. *United States v. Dare*, 425 F.3d 634, 641 (9th Cir. 2005) ("We agree that *Harris* is difficult to reconcile with the Supreme Court's recent Sixth Amendment jurisprudence, but *Harris* has not been overruled."); *United States v. Jones*, 418 F.3d 726, 732 (7th Cir. 2005) ("Under *Harris*, which the Supreme Court did not disturb in *Booker*, imposition of the . . . mandatory minimum sentence for a violation of 924(c)[] . . . did not violate the Sixth Amendment."); *United States v. Duncan*, 413 F.3d 680, 683 (7th Cir. 2005) ("Nothing in *Booker* or *Blakely* suggests that the Court reconsidered, much less overruled, its holding in *Harris*."); *United States v. Perkins*, 421 F. Supp. 2d 209, 218-219 (D. Maine 2006) ("The Supreme Court has never formally overruled *Harris* and *Malouf* appears to be the only decision against its continuing validity."); *United States v. Ezell*, 417 F. Supp. 2d 667, 671 (D. Pa. 2006) ("This Court concludes that, although the reasoning of *Harris* . . . has been undermined by *Booker* and *Blakely*, it is not the role of this Court to overrule a decision of the Supreme Court, or even to anticipate such an overruling by the Supreme Court.").

However, this appears to be an issue of first impression in this circuit.[4] We will address

Bowen's arguments separately. As none of them was raised during the district court proceedings,

they are reviewed for plain error. *Mahon*, 444 F.3d at 532.

**a.      Prior Convictions**

Bowen first argues, after *Booker*, the Sixth Amendment requires his status of a double felon

must be submitted to the jury and determined beyond a reasonable doubt, as this finding raises the

mandatory minimum sentence he faces.

In *Apprendi v New Jersey,* 530 U.S. 466, 147 L. Ed. 2d 435, 120 S. Ct. 2348 (2000), the

Supreme Court held a trial court's factual findings regarding prior convictions do not implicate the

Sixth Amendment. 530 U.S. at 488. Further, the Sixth Circuit has concluded *Booker* implicitly

adopted *Apprendi's* understanding regarding prior convictions. *See United States v. Barnett*, 398

F.3d 516, 525 (6th Cir. 2005)("there is no language in *Booker* suggesting that the Supreme Court,

---

[4] In *United States v. Harris*, 397 F.3d 404, 414 (6th Cir. 2005), the Sixth Circuit addressed the type of firearm enhancement in 18 U.S.C. § 924(c) and held this was an element of the crime that must be charged to the jury and found beyond a reasonable doubt, unlike the brandishing or discharging enhancements found to be sentencing factors by the Supreme Court in *Harris v. United States*. However, the Sixth Circuit expressly declined to "address the general constitutionality of mandatory-minimum sentences imposed through judicial fact-finding," noting that was "a practice explicitly approved by the Supreme Court prior to *Booker* when traditional sentencing factors, rather than elements, are involved," and citing *Harris* for this proposition. *Id.* The Sixth Circuit further pointed out its holding was narrow and applied only to the § 924(c) firearm-type enhancement. *Id.*

In a recent unpublished case, the Sixth Circuit reiterated *Harris's* holding "only exposure to a higher maximum sentence, not the triggering of a mandatory minimum, will necessarily affect a defendant's Sixth Amendment rights." *United States v. Diaz*, 2006 WL 1228696 at *4 (6th Cir. May 8, 2006) (unpublished) (citing *United States. v. Copeland*, 321 F.3d 582, 602 n.5 (6th Cir. 2003)("We read [the *Harris*] opinion to indicate that a majority of the Justices agree that *Apprendi* [*v. New Jersey* 530 U.S. 466, 147 L. Ed. 2d 435, 120 S. Ct. 2348 (2000)],does not apply to mandatory minimum sentences, and thus consider that holding to be binding.")). However, that case did not explicitly consider *Booker* or *Blakely's* impact on *Harris*.

Additionally, the Sixth Circuit has recently quoted *Harris* approvingly in discussing mandatory minimums under 18 U.S.C. § 924(c) although, again, it did not consider *Booker* or *Blakely's* impact on that decision. *See United States v. Van Hoosier*, 442 F.3d 939, 944 (6th Cir. 2006).

as part of its remedial scheme adopted in that case, intended to alter the exception to *Apprendi* allowing district courts to consider the fact and nature of prior convictions without submitting those issues to the jury").

The district court here did just what *Apprendi,* even after *Booker*, allowed it to do, in finding Bowen had at least two prior felony convictions that qualified for a higher mandatory minimum under § 841(b)(1)(A). Therefore the district court did not commit plain error in finding Bowen had committed at least two prior felonies that, combined with the drug quantity of which he was found guilty, made him eligible for the mandatory minimum sentence of life imprisonment under 21 U.S.C. § 841(b)(1)(A).

### b.      Drug Quantity

Bowen next argues, after *Booker*, the Sixth Amendment requires the drug quantity for which he is held responsible (in excess of 50 grams) to be submitted to the jury and determined beyond a reasonable doubt, as this finding raises the mandatory minimum sentence he faces.

This argument is without import, because the drug quantity used in sentencing of more than 50 grams of crack cocaine actually was submitted to a jury and found beyond a reasonable doubt. The verdict form specifically asked the jury whether Bowen was guilty of "the offense of conspiracy to distribute more than 50 grams of a mixture or substance containing a detectable amount of cocaine base (crack) . . ." (JA at 78). Even if Bowen prevailed on this argument, he would be without remedy as the district court already did what he is now seeking.

Therefore, the district court did not commit plain error when it sentenced Defendant Bowen to the mandatory minimum sentence of life imprisonment required where a defendant was convicted

of a crime involving in excess of 50 grams of crack, in conjunction with his two prior felony convictions.

**c.      Due Process Argument**

Bowen also argues the due process clause of the Fifth Amendment requires application of the beyond a reasonable doubt standard for drug quantity. However, he failed to flesh out this argument thoroughly enough in his brief for this court to evaluate it. Further, as noted above, the quantity that triggered the mandatory minimum sentence at issue here was in fact submitted to the jury and found beyond a reasonable doubt, so even if he prevailed on this argument it would not merit a reversal and remand.

For all the above reasons, the district court did not commit any error in sentencing Defendant Bowen and therefore there was no plain error. *Mahon*, 444 F.3d at 532.

**d.      *Harris***

In conclusion, we see no reason to hold *Harris* has been implicitly overruled by *Booker* and *Blakely* here, particularly considering one of the bases for the mandatory minimum life sentence, Bowen's prior convictions, has been upheld as a sentencing factor a judge may find without submission to a jury, and the other basis for his sentence, the drug quantity, actually was submitted to and found by a jury beyond a reasonable doubt. If there were a case in which to consider whether *Harris's* reasoning has been overruled by *Booker* and *Blakely*, this is not it. We **AFFIRM** Bowen's sentence.

**B.      Hall**

Hall contends his sentence was procedurally unreasonable and should be vacated because the

district court did not adequately address the mitigating factors he submitted in requesting a below-Guidelines sentence.

At sentencing, Hall argued the criminal history category assigned to him overrepresented the seriousness of his record and likelihood of future offenses, as well as that he had given the Government valuable assistance, and the district court "did not respond to these arguments," therefore an error was committed. Hall also argues his sentence was not reasonable, because it is greater than necessary to comply with relevant sentencing purposes under 18 U.S.C. § 3553(a). Hall did not raise this argument at sentencing before the district court, therefore it is reviewed for plain error. *Mahon*, 444 F.3d at 532.

### 1.    Waiver

The Government asserts this argument was waived by Hall's failure to object to the sentence before the district court when it indicated what sentence would be imposed, therefore the appeals court cannot review it even for plain error. *See United States v. Olano*, 507 U.S. 725, 733-34 (1993). However, the United States Supreme Court in *Olano* distinguished between waiver, or "intentional relinquishment or abandonment of a known right," and forfeiture, "the failure to make the timely assertion of a right." *Id.* at 733 (quoting *Johnson v. Zerbst*, 304 U.S. 458, 464, 82 L. Ed. 1461, 58 S. Ct. 1019 (1938)).

The Government does not give any support for its argument Defendant's failure to raise this argument at sentencing was a waiver, with the consequence that the appeals court cannot even review it for plain error, rather than a forfeiture, with a less drastic consequence. Upon our review of the record, it appears Hall merely failed to raise this issue at sentencing rather than in any way

intentionally relinquished it. That constitutes forfeiture, rather than waiver, therefore the appeals court may review this claim for plain error. *See United States v. Osborne*, 402 F.3d 626, 630 (6th Cir. 2005) (distinguishing forfeiture from waiver; evaluating defendant's actions as waiver rather than forfeiture where issue was raised in district court and defendant executed a document purporting to waive constitutional right at issue).

**2.      Reasonableness of Sentence**

**a.      Reasonableness Review**

Since the United States Supreme Court's decision in *Booker*, district judges have been afforded considerable discretion in determining the sentence of a criminal defendant. In *Booker*, the Supreme Court made the Guidelines advisory by excising 18 U.S.C. § 3553(b), the provision of the Sentencing Reform Act that made the Guidelines mandatory. 543 U.S. at 258- 65. However, the Supreme Court also held "the district courts, while not bound to apply the Guidelines, must consult those Guidelines and take them into account when sentencing." *Id.* at 264. Now, sentencing judges must determine the sentence by application of the factors set forth 18 U.S.C. § 3553(a) but must also give consideration to the Guidelines (including the Guidelines sentencing range). *Id.* at 244-45, 258. Further, section 3553(a) contains a "parsimony" provision that commands sentencing judges to impose a sentence "sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2)," which provides sentencing judges a list of goals or factors they must consider in

imposing a sentence.  18 U.S.C. § 3553(a).[5]

"[W]hen a defendant challenges a district court's sentencing determination, [this Court is]

instructed to determine 'whether [the] sentence is unreasonable.'" *United States v. Webb*, 403 F.3d

373, 383 (6th Cir. 2005), *cert. denied*, -- U.S. --, 126 S. Ct. 1110, 163 L. Ed. 2d 919 (2006) (quoting

---

[5]Section 3553(a) reads, in its entirety,
(a) Factors to be considered in imposing a sentence. The court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection. The court, in determining the particular sentence to be imposed, shall consider--
 (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
 (2) the need for the sentence imposed--
  (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
  (B) to afford adequate deterrence to criminal conduct;
  (C) to protect the public from further crimes of the defendant; and
  (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
 (3) the kinds of sentences available;
 (4) the kinds of sentence and the sentencing range established for--
  (A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines--
   (i) issued by the Sentencing Commission pursuant to section 994(a)(1) of title 28, United States Code, subject to any amendments made to such guidelines by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under section 994(p) of title 28); and
   (ii) that, except as provided in section 3742(g) [18 USCS § 3742(g)], are in effect on the date the defendant is sentenced; or
  (B) in the case of a violation of probation or supervised release, the applicable guidelines or policy statements issued by the Sentencing Commission pursuant to section 994(a)(3) of title 28, United States Code, taking into account any amendments made to such guidelines or policy statements by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under section 994(p) of title 28);
 (5) any pertinent policy statement--
  (A) issued by the Sentencing Commission pursuant to section 994(a)(2) of title 28, United States Code, subject to any amendments made to such policy statement by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under section 994(p) of title 28); and
  (B) that, except as provided in section 3742(g) [18 USCS § 3742(g)], is in effect on the date the defendant is sentenced.
 (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and
 (7) the need to provide restitution to any victims of the offense.

-23-

*Booker*, 543 U.S. at 261) (third alteration in original).

Hall makes no objection to the district court's resolution of his objections to or the calculation of his Guidelines range. However, Hall takes the district court to task for "perform[ing] little analysis beyond the advisory Guideline calculations" and failing to "explain why a 360 month sentence was not greater than necessary to fulfill the sentencing factors" or respond to each and every argument in his sentencing memo (Hall's Brief at 30). Thus, he challenges the procedural reasonableness, rather than the substantive reasonableness, of his sentence. See *United States v. McBride*, 434 F.3d 470, 475 n.3 (6th Cir. 2006) (reasonableness review entails both substantive and procedural elements) (citing *Webb*, 403 F.3d at 383-85 (procedural reasonableness review requires consideration of ". . . the procedures employed by the district court in reaching its sentencing determination.")).

A sentence within the applicable advisory Guidelines range is entitled to a rebuttable presumption of reasonableness. *United States v. Williams*, 436 F.3d 706, 708 (6th Cir. 2006) ("We now join several sister circuits in crediting sentences properly calculated under the Guidelines with a rebuttable presumption of reasonableness."). As Hall was sentenced at the bottom of the Guidelines range, which neither party now asserts was improperly calculated, his sentence is entitled to this presumption of reasonableness. *Id.* However, the court's inquiry does not end there; it must still evaluate the district court's sentencing procedure for reasonableness. *McBride*, 434 F.3d at 475 n. 3; see also *United States v. Jones*, 445 F.3d 865, 869 (6th Cir. 2006) (even where district court properly calculated and imposed a within-Guidelines sentence, its "consideration and analysis of the factors listed in [18 U.S.C.] § 3553(a)" must be reviewed for reasonableness).

A district court must articulate sufficient reasoning for its sentence in order for the appeals court to give it meaningful review, even where the sentence is within the applicable Guidelines range. *United States v. Foreman*, 436 F.3d 638, 644 (6th Cir. 2006); *United States v. Richardson*, 437 F.3d 550, 554 (6th Cir. 2006). The rebuttable presumption of reasonableness does not relieve the district court of its obligation to consider the § 3553(a) factors and comply with the parsimony provision in § 3553(a)(2). *Foreman,* 436 F.3d at 644. But the Sixth Circuit has noted "'although explicit mention of [the § 3553(a) factors] may facilitate review, this court has never required the "ritual incantation" of the factors to affirm a sentence.'" *Williams*, 436 F.3d at 709 (6th Cir. 2006) (quoting *United States v. Johnson*, 403 F.3d 813, 816 (6th Cir. 2005)); *accord, e.g., United States v. Kirby*, 418 F.3d 621, 626 (6th Cir. 2005) ("The court need not recite these factors but must articulate its reasoning in deciding to impose a sentence in order to allow for reasonable appellate review."); *United States v. McClellan*, 164 F.3d 308, 310 (6th Cir. 1999) (noting there is no "requirement that a district court make specific findings relating to each of the factors considered"); see also *United States v. Harness*, – F.3d –, 2006 WL 1976040 at *5 (6th Cir. 2006) (finding sentence reasonable where district court noted it had received a psychological report and letters from the defendants' family members, stated it considered two specific § 3553(a) factors as well as all the others, and sentenced the defendant to the middle of the Guidelines range).

A district court must consider, on the record, any "particular argument" a defendant raises for a lower sentence, and "explain the basis for rejecting it." *Richardson*, 437 F.3d at 554. However, the presumption of reasonableness is not lost "whenever a district judge does not explicitly address every defense argument for a below-Guidelines sentence. Otherwise, the procedural reasonableness

review will become appellate micromanaging of the sentencing process." *Jones*, 445 F.3d at 871.

Where the district court considers the applicable Guidelines range and § 3553(a) factors, and

articulates its reasons for the sentence imposed, the sentence will be found reasonable. *Id.* (quoting

*Webb*, 403 F.3d at 385).

**b.      Procedural Reasonableness of Sentence**

As outlined in detail above, after entertaining extensive argument from both Hall and the

Government, the district court fully laid out the basis for its rulings on each of Hall's objections.

The district court also showed its consideration of the § 3553(a) factors in outlining the basis for his

sentence. Although it did not explicitly refer to its reasons for the sentence imposed as §3553(a)

factors, it did point to the nature of the type of drug trafficking at issue in this case and its effect on

society, Hall's enticement or manipulation of two women to take part in the conspiracy, protection

of society by a long sentence that would effectively incapacitate Hall from drug dealing when he is

released, the danger created by Hall's absconsion to North Carolina after indictment and evasion of

arrest, and Hall's possession of firearms during the offense. This shows clear consideration of the

§ 3553(a) factors. The district court did acknowledge "there are some redeeming qualities in the

defendant" but ultimately found a sentence within the Guidelines was appropriate due to Hall's

manipulation of weak persons to participate in the conspiracy (JA at 479).

The district court's ruling more than complies with the requirement a district court articulate

its reasoning in order to allow for meaningful appellate review. *See Richardson,* 437 F.3d at 554

("The sentencing hearing transcript reveals that the district court articulated and explained its reasons

for sentencing [defendant] to a term at the higher end of the Guidelines range."). Further, the district

court met its burden of addressing the defendant's "particular argument[s]" for a lower sentence, and "explain[ed] the basis for rejecting [them] . . ." when it thoroughly discussed his objections and acknowledged it had considered the mitigating evidence he presented.[6] *Richardson*, 437 F.3d at 554. To require more of sentencing courts than this court did would violate the principle set out in *Jones*, that a district court need not "explicitly address every defense argument for a below-Guidelines sentence." 445 F.3d at 871.

Therefore, we hold the district court's sentence imposed on Hall was reasonable. *Webb*, 403 F.3d at 383. Hall has not shown the district court made any error in his sentencing such that it committed a plain error. *Mahon*, 444 F.3d at 532.

## IV. CONCLUSION

For the foregoing reasons, we **AFFIRM** the district court's denial of Bowen's motion under Rule 29 and **AFFIRM** both Bowen's and Hall's sentences.

---

[6]The arguments in favor of a below-Guidelines sentence consisted only of noting Hall's criminal history was based on rather old convictions he obtained at a young age and his good behavior while incarcerated during this case, as well as the facts he was remorseful and accepted responsibility for the offense, and had a supportive family.