UNITED STATES of America,
Plaintiff–Appellee,

v.

John Paul AVERY (95–6430), Sherry Avery
Daniels (95–6443), Michele Avery Dan-
iels (95–6521), Defendants–Appellants.

Nos. 95–6430, 95–6443, and 95–6521.

United States Court of Appeals,
Sixth Circuit.

Argued March 10, 1997.

Decided Nov. 3, 1997.

Rehearing and Suggestion for Rehearing
En Banc Denied Dec. 16, 1997.

Terry M. Cushing (briefed), Asst. U.S. At-
torney, Steven S. Reed (argued and briefed),

Asst. U.S. Attorney, Office of the U.S. Attorney, Louisville, KY, for Plaintiff–Appellee.

Marcia G. Shein (briefed), Richard D. Biggs (argued), Atlanta, GA, for Defendants–Appellants.

Before: RYAN and DAUGHTREY, Circuit Judges; FRIEDMAN, District Judge.[*]

RYAN, Circuit Judge.

## OPINION

We are required to decide, in this case, 1) whether the evidence is sufficient to support the multiple drug-trafficking and money-laundering offenses of which the three defendants have been convicted, and 2) whether the constitutional bar against double jeopardy precludes defendant John Paul Avery's conviction for both conspiracy and engaging in a continuing criminal enterprise.

Our answer to both questions is yes, and we will, therefore, affirm all of the convictions of all the defendants, except Avery's conviction for conspiracy, which we will reverse.

Avery was convicted of running an elaborate marijuana-growing and marketing operation and a money-laundering scheme in conspiracy with his two daughters, Sherry Avery Daniels and Michele Avery Daniels.

For the reasons that follow, we will vacate Avery's conviction and sentence for conspiracy, and affirm his conviction and sentence for CCE. We also affirm Sherry Avery Daniels's and Michele Avery Daniels's convictions for conspiracy.

## I.

Avery and his wife, Edde, owned a farm in Clinton County, Kentucky. Originally, they lived on the farm with their two daughters Sherry and Michele, and son William Paul Avery (Paully). Avery also owned an oil-drilling company, Twin Lakes Drilling Company, and operated that company from his home. Eventually, Paully built and moved into a house across the street from the farm. In 1989, Ricky Lee Daniels and his brother, Paul Daniels, married the Avery sisters.

In 1988, Avery dug a basement with a subfloor on his farm, ostensibly to build a house. In 1989, Ricky Daniels began working for Avery's drug operation by installing a watering system and "grow lights" in the unfinished basement. Thereafter, between 1989 and 1991, Ricky, together with Avery and his son, Paully, used the basement for growing marijuana in large quantities. At Avery's trial, Ricky testified that the basement contained between 400 and 500 plants during an average "grow cycle." Ricky also testified that a grow cycle took about 90 days, and that after tending the crop during the grow cycle, he would harvest it and package it in individual ½-pound bags that were, in turn, packaged in two large garbage bags. He would then load the shipment into the trunk of Avery's car. Within a week of leaving with a shipment, Avery would pay Ricky $6,000 to $12,000 in cash.

Sometime in 1990, Avery decided to expand his operation, and directed Ricky in building an underground complex consisting of a 76–foot tunnel and two main rooms, each approximately 14– to 16–feet wide and 132–feet long. The "bunker complex" was completed in 1991, and allowed Avery to significantly increase his production. In fact, the operation became so large that Avery hired David Gene Tapley to assist Ricky in cultivating and harvesting the marijuana crop. Special Agent Richard Badaracco of the Drug Enforcement Administration testified that there were a total of 1,296 marijuana plants found in the bunker complex at the time of the government raid in 1994. Further, Agent Badaracco estimated that a conservative wholesale value of the mature crop found during the raid on the complex would be $351,000, or, when multiplied by harvests every 90 days, $1,400,000 on an annual basis.

## II.

Critically, all of Avery's large transactions were in cash, under $10,000, and ostensibly

[*] The Honorable Bernard A. Friedman, United States District Judge for the Eastern District of Michigan, sitting by designation.

designed to avoid the Internal Revenue Service's Currency Transaction Reporting requirements.

Ricky Daniels constructed most of the bunker complex under Avery's direction. Avery purchased the cement for the walls and foundation from a cement company and paid the supplier $7,000 in cash. The receipt for the payment was signed "M.A."; the initials of one of Avery's daughter's, codefendant Michele Avery Daniels.

In 1992, as the bunker was being completed, Avery paid a builder $192,000 in cash to construct a house on top of the basement previously used for the marijuana operation. In 1989, Avery had paid this same builder $65,000-to-$70,000 to build a house for his son, Paully. Additionally, Avery paid another $30,732 to have the driveway installed. Payment for the driveway was in a series of transactions, each under $10,000. Specifically, Ricky Daniels and Lanny Bowlin, Avery's brother-in-law, wrote checks to the paving company for $9,000 each, and Edde Avery paid the paving company $3,732 in cash along with three cashier's checks in the amount of $5,000, $2,000, and $2,000, respectively.

Avery furnished his house by arranging to have family members pay a furniture store $88,000 in cash. Various family members, including Bowlin, Edde Avery, and Avery's cousin, Randy Avery, as well as Avery himself, opened accounts at the local furniture store by depositing $2,000 in cash. Four days after opening their accounts, each of the family members transferred their credit balances to Avery's account. Additionally, during a single delivery in March 1993, the furniture store collected $31,066 in cash as payment for the delivery. Subsequent to the March delivery, Michele Avery Daniels picked out $12,000 worth of furniture, and Paully Avery picked out more than $12,200 worth of furniture. Both had their purchases credited to the account of Avery. Finally, testimony at trial indicated that Avery, Edde Avery, and Randy Avery each purchased cashier's checks payable to Ford Furniture Company in the amounts of $4,500, $4,500, and $6,000, respectively.

For work performed on the marijuana operation, Tapley was paid with checks drawn from Twin Lakes Drilling and signed by Michele Avery Daniels. Michele was the bookkeeper and secretary at Avery's drilling company. However, not all of the business done through Twin Lakes Drilling was illegal. Tapley testified that he and Ricky actually participated in some drilling jobs, but the work was intermittent. However, Tapley did testify that on one occasion Avery needed to buy a drill and instructed him to purchase a cashier's check for $8,000. Tapley stated that Avery pulled up to the drive-up window of a bank, reached into a briefcase full of money, and extracted the $8,000, bound in $1,000 stacks. Tapley also testified that at the same time, Avery gave another $8,000 to Michele, and instructed her to go into the bank and purchase another cashier's check. Finally, Tapley was subsequently given three other cashier's checks by Avery, for a total of five, and sent to purchase the drill bit.

While Avery's marijuana manufacturing and distribution business may have been lucrative, his oil-drilling company, Twin Lakes Drilling, formed in 1991, showed a net profit of $3,597 in 1991 and a loss of $23,977 in 1992. Avery's only other legitimate source of income was a $417 monthly disability check, and a $24,000 bank loan.

### III.

In February 1994, based on information that suggested an underground grow operation was being conducted on Avery's farm, Kentucky state authorities conducted a flyover of the farm in an airplane using a thermal imaging device (referred to as FLIR). The FLIR is designed to pick up thermal images, such as power sources, which are concealed. The fly-over revealed the presence of the bunker complex. After consultation with the DEA, officers from the Kentucky State Police, on the ground, conducted a hand-held thermal image scan of the property in order to confirm the fly-over results. Subsequently, a federal search warrant was obtained, and a raid of the property was conducted involving the DEA, the Kentucky National Guard, a Kentucky State Police Special Response Team, and the Clinton County Sheriff's Department.

During the raid, both Ricky Daniels and David Tapley were arrested. Additionally, the officers found that the bunker complex contained, among other things, grow lights, a generator, exhaust fans, automatic timers, scales, a refrigerator containing 35 one-pound bags of marijuana, and 1,296 live marijuana plants.

On August 17, 1994, a grand jury returned an indictment against defendants John Paul Avery, Sherry Avery Daniels, and Michele Avery Daniels, as well as Ricky Lee Daniels, David Gene Tapley, and David Stonecipher, alleging violations of 21 U.S.C. §§ 841(a)(1), 846, 848, and 853; and 18 U.S.C. §§ 2, 371, 982, 1956(a)(1)(A)(i), and 1957.

Ricky Daniels entered into a plea agreement with the government and pled guilty to conspiracy to manufacture and possession with intent to distribute marijuana, manufacturing marijuana, and possession with intent to distribute marijuana. Ricky Daniels also testified for the government against John Avery, Sherry Avery Daniels, and Michele Avery Daniels. Tapley, although charged on a separate indictment, also pled guilty and testified for the government under a plea agreement. The charges against Stonecipher were subsequently dismissed.

The jury convicted the defendants as follows: John Paul Avery was convicted for conspiracy to manufacture and possession with intent to distribute marijuana, in violation of 21 U.S.C. § 846 (Count 1); continuing criminal enterprise, in violation of 21 U.S.C. § 848 (Count 2); aiding and abetting in the manufacturing of marijuana (in excess of 1,000 plants), in violation of 21 U.S.C. § 841(a)(1) & 18 U.S.C. § 2 (Count 3); aiding and abetting in the possession with intent to distribute marijuana (in excess of 1,000 plants), in violation of 21 U.S.C. § 841(a)(1) & 18 U.S.C. § 2 (Count 4); conspiracy to launder money, in violation of 18 U.S.C. § 371 (Count 5); and three counts of money laundering, in violation of 18 U.S.C. §§ 1956(a)(1)(A)(i), 1957 (Counts 7, 9, and 10). Avery was sentenced to concurrently serve 240 months on Counts 1, 2, 3, and 4; 60 months on Count 5; 240 months on Count 7; and 120 months on Counts 9 and 10.

Defendant Sherry Avery Daniels was convicted of conspiracy to manufacture and possession with intent to distribute marijuana, in violation of 21 U.S.C. § 846 (Count 1); conspiracy to launder money, in violation of 18 U.S.C. § 371 (Count 5); and money laundering, in violation of 18 U.S.C. § 1957 (Count 8). Sherry was sentenced to concurrently serve 78 months on Count 1; 60 months on Count 5; and 78 months on Count 8. The district court subsequently amended Sherry's sentence to a total term of 41 months to reflect changes in the sentencing guidelines.

Defendant Michele Avery Daniels was convicted of conspiracy to manufacture and possession with intent to distribute marijuana, in violation of 21 U.S.C. § 846 (Count 1); conspiracy to launder money, in violation of 18 U.S.C. § 371 (Count 5); and four counts of money laundering, in violation of 18 U.S.C. §§ 1956(a)(1)(A)(i), 1957 (Counts 6, 10, 11, and 12). Michele was sentenced to concurrently serve 120 months on Counts 1, 11, and 12; 60 months on Count 5; and 120 months on Counts 6 and 10.

The defendants perfected this timely appeal.

## IV.

■ We first address whether the convictions of Sherry Avery Daniels and Michele Avery Daniels for conspiracy were supported by sufficient evidence.

Section 846 provides that "[a]ny person who attempts or conspires to commit any offense defined in this subchapter shall be subject to the same penalties as those prescribed for the offense, the commission of which was the object of the attempt or conspiracy." 21 U.S.C. § 846 (Supp.1997).

■ To obtain a drug conspiracy conviction under section 846, "the government must prove that a conspiracy existed, that the accused knew of the conspiracy, and that he knowingly and voluntarily joined it." *United States v. Ledezma*, 26 F.3d 636, 640 (6th Cir.1994) (internal quotation marks and citations omitted). Although this court has long held that the essence of conspiracy is agreement, proof of a formal agreement is not necessary; "a tacit or material understand-

ing among the parties" will suffice. *United States v. Pearce,* 912 F.2d 159, 161 (6th Cir. 1990). " 'A conspiracy may be inferred from circumstantial evidence that can reasonably be interpreted as participation in the common plan.' " *United States v. Blakeney,* 942 F.2d 1001, 1010 (6th Cir.1991) (citation omitted). The government need not show that a defendant participated in all aspects of the conspiracy; it need only prove that the defendant was a party to the general conspiratorial agreement. Although the connection between the defendant and the conspiracy need only be slight, an agreement must be shown beyond a reasonable doubt.

▪ We review a claim of insufficient evidence using the same standard as the district court. *United States v. Beddow,* 957 F.2d 1330, 1334 (6th Cir.1992). "[T]he relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979). We draw all available inferences and resolve all issues of credibility in favor of the jury's verdict, and it is not necessary for us to exclude every reasonable hypothesis but guilt.

As noted above, Tapley testified that both Sherry and Michele helped move the grow lights from the basement marijuana operation to the bunker complex. Additionally, before working on the marijuana plants each day, Tapley testified he would go to Avery's house to meet Ricky Daniels. Michele would then call Ricky and let him know Tapley was waiting for him. Both before and after working on the plants, Tapley would discuss his day's activities with Avery, Michele and Edde, including marijuana production levels. Tapley also testified that he was paid eight dollars per hour to help with the marijuana operation and that at the end of every week, he would report the number of hours he worked to Michele, and she would then write him a check from the Twin Lakes Drilling account.

▪ As discussed earlier, Sherry and Michele were also extensively involved in the money-laundering operation. The evidence, although much of it circumstantial, heavily incriminates Sherry and Michele. Circumstantial evidence on its own can sustain a jury's verdict, and such circumstantial evidence need not remove every reasonable possibility of doubt. *United States v. Townsend,* 796 F.2d 158, 161 (6th Cir.1986). Although they "offered an innocent explanation for the incriminating facts proved by the government, the jury was free to disbelieve [them]." *Ledezma,* 26 F.3d at 641. This court has held that since money laundering is an integral part of a drug enterprise, a jury is entitled to infer from such conduct a conspiracy to aid and abet the violation of the narcotics laws. *United States v. Patrick,* 965 F.2d 1390, 1397 n. 2 (6th Cir.1992), *vacated in part on other grounds, Mohwish v. United States,* 507 U.S. 956, 113 S.Ct. 1378, 122 L.Ed.2d 754 (1993); *see United States v. Orozco–Prada,* 732 F.2d 1076, 1080–81 (2d Cir.1984).

We find that there was sufficient evidence from which a rational jury could find that Sherry and Michele knowingly participated in the conspiracy to manufacture and possession with intent to distribute marijuana. We therefore affirm the jury verdicts convicting them of violating 21 U.S.C. § 846.

## V.

▪ We next consider Avery's claim that his convictions for both CCE and conspiracy violate the Double Jeopardy Clause of the Fifth Amendment.

The Supreme Court recently addressed this issue and held that, given the requirements of *Blockburger v. United States,* 284 U.S. 299, 304, 52 S.Ct. 180, 182, 76 L.Ed. 306 (1932), conspiracy, under 21 U.S.C. § 846, is a lesser included offense of CCE, 21 U.S.C. § 848. *Rutledge v. United States,* —— U.S. ——, ——, 116 S.Ct. 1241, 1247, 134 L.Ed.2d 419 (1996). As such, conviction under both statutes constitutes cumulative or multiple punishment not authorized by Congress. *Id.* at ——, 116 S.Ct. at 1249. Therefore, because "Congress intended to authorize only one punishment ..., one of petitioner's convictions, as well as its concurrent sentence, is unauthorized punishment for a separate of-

fense and must be vacated." *Id.* at —— ——, 116 S.Ct. at 1250–51 (internal quotation marks, brackets, and citation omitted). The Supreme Court did not determine which offense must be vacated.

Although the government concedes the double jeopardy issue on appeal, Avery contends that the CCE conviction should be vacated, while the government merely claims that the conspiracy conviction should be vacated.

In *United States v. Schuster,* 769 F.2d 337 (6th Cir.1985), this court held that where a defendant had been convicted of both conspiracy under 21 U.S.C. § 846 and CCE under 21 U.S.C. § 848, the conspiracy charge was a lesser included offense of the CCE conviction and thus merged into the CCE conviction. *Id.* at 345. As a result, the court ordered the conspiracy convictions vacated. *Id.* Similarly, in *United States v. Davis,* 809 F.2d 1194, 1204–05 (6th Cir.1987), this court again upheld the continuing criminal enterprise conviction and remanded with instructions to dismiss the conspiracy convictions.

However, in *United States v. Chambers,* 944 F.2d 1253 (6th Cir.1991), we were concerned that, due to an anomaly in the sentencing guidelines, vacating the defendants' sentences on the lesser included offense of conspiracy actually resulted in a lesser sentence. We then surveyed the circuits that had addressed the question of which charge to vacate and held:

> None of those cases discuss, however, any reason for selecting the conspiracy conviction, rather than the continuing criminal enterprise conviction, for dismissal except to observe that the conspiracy offense is the "lesser" of the two. In this case, however, measured by the guidelines-prescribed sentences at least, conspiracy is not the less serious offense because of what the government calls an anomaly in the sentencing guidelines, although it is, in terms of its elements, included in the criminal enterprise offense.
>
> [Here, defendant's] adjusted offense level for conspiracy is 40, while his adjusted offense level for continuing criminal enterprise is only 36. [Defendant] wants the conspiracy conviction vacated, and the government wants the continuing criminal enterprise conviction vacated. There being no binding precedent directly controlling the matter, we think it is a decision for the trial court to make. We shall, therefore, remand [defendants'] convictions for conspiracy and continuing criminal enterprise, with instructions that the district court vacate one of the two convictions and its corresponding sentence in each defendant's case. The district court must also consider what, if any, effect the vacated conviction and sentence will have upon sentences imposed under the guidelines for each defendant's other convictions.

*Id.* at 1269 (internal quotation marks and citation omitted). Critically, the problem that was presented in *Chambers,* the disparate treatment given the offenses in the sentencing guidelines, was corrected by subsequently issued guidelines. *See* U.S.S.G § 2D1.5(a) (1992).

Here, the district court adopted the presentence investigation report, which used Avery's CCE conviction to determine his base offense level because it produced a *higher* base offense level than the conspiracy conviction. Therefore, the anomaly that existed in *Chambers* is not present in this case, and there is no need for a remand.

Accordingly, we vacate Avery's conviction and sentence for conspiracy under 21 U.S.C. § 846.

## VI.

We next consider Avery's claim that his CCE conviction should be vacated because the government did not prove that he committed a series of offenses in concert with five or more persons. Specifically, Avery argues that each of the five or more persons must have, himself or herself, committed a series of offenses under Title 21, defined as three or more violations. Specifically, Avery argues that Sherry and Michele Daniels may not be counted as two of the five persons because their convictions for money laundering were not convictions under Title 21, and further, because they were each convicted of only one count of conspiracy under Title 21.

■ In order to convict a defendant of engaging in a continuing criminal enterprise, the United States must prove: (1) that the defendant committed a felony violation of federal narcotics laws; 2) that the violation was part of a continuing series of three or more drug offenses committed by the defendant; 3) that the defendant committed the series of offenses in concert with five or more persons; 4) that the defendant acted as an organizer, supervisor, or manager with regard to these five or more persons; and 5) that the defendant obtained substantial income or resources from this series of violations. *See United States v. Elder*, 90 F.3d 1110, 1122–23 (6th Cir.), *cert. denied*, ─── U.S. ───, 117 S.Ct. 529, 136 L.Ed.2d 415 *and cert. denied*, ─── U.S. ───, 117 S.Ct. 529, 136 L.Ed.2d 415 (1996), *and cert. denied*, ─── U.S. ───, 117 S.Ct. 993, 136 L.Ed.2d 873 (1997); *see also* 21 U.S.C. § 848(c). On appeal, Avery concedes all elements except the third. He argues the government proved that he acted in concert with, at most, four individuals: Ricky Daniels, Paully Avery, David Tapley, and David Stonecipher.

■ The relationship requirement under section 848 is flexible. The defendant need not have the same type of relationship with each individual, and the relationships need not exist at the same time. Additionally, the jury need not unanimously agree on the identities of the five particular persons, nor need the five persons be named in the indictment or bill of particulars. A person can be "found to be under the defendant's organization or supervision because she knew about the drug operation, took orders directly from the defendant and helped in the drug business." *United States v. English*, 925 F.2d 154, 157 (6th Cir.1991). A broker or courier under the defendant's supervision, someone who stores drugs for the defendant, or one who collects or launders drug proceeds is also within the ambit of the statute. *United States v. Phibbs*, 999 F.2d 1053, 1082–85 (6th Cir.1993).

We have observed in the past that since money laundering is an integral part of a drug enterprise, a jury is entitled to infer from such conduct a conspiracy to aid and abet the violation of narcotics laws, and thus be eligible for consideration when determining participants for CCE purposes. *Patrick*, 965 F.2d at 1397 n. 2.

■ We hold that Sherry Daniels and Michele Daniels qualify as participants for the purpose of calculating the number of participants in the enterprise under the third element of the CCE statute. However, our inquiry cannot stop there because Avery argues that each participant in the CCE must have, himself or herself, committed a series of offenses, defined as three or more violations. Avery does not cite any authority for this proposition other than the district court's instructions to the jury: "The phrase 'in concert with five or more persons' means some type of agreement or joint action, ... whether direct or indirect, with at least five other persons who were involved in the continuing series of narcotics violations." Avery argues that the last clause in that sentence supports his assertion.

We disagree. The court's instructions were properly interpreted by the jury to mean that the "five or more persons" acting "in concert" with Avery must be persons who participated in *Avery's* "continuing series of narcotics violations." There is no requirement in the statute or in prior decisions of this court that requires the government to prove that each of the participating individuals, themselves, be shown to have also participated in three or more of their own narcotics violations.

## VII.

Therefore, we **VACATE** Avery's conviction and sentence for conspiracy, in violation of 21 U.S.C. § 846; **AFFIRM** Avery's conviction and sentence for engaging in a continuing criminal enterprise, in violation of 21 U.S.C. § 848; and **AFFIRM** Sherry Avery Daniels's and Michele Avery Daniels's convictions for conspiracy, in violation of 21 U.S.C. § 846.