NOT RECOMMENDED FOR PUBLICATION
File Name: 18a0184n.06

No. 17-3986

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
Apr 09, 2018
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE |
| THEODORE W. ELENNISS, | ) | NORTHERN DISTRICT OF |
| | ) | OHIO |
| Defendant-Appellant. | ) | |
| | ) | |
| | ) | |

BEFORE: SUHRHEINRICH, GIBBONS, and KETHLEDGE, Circuit Judges.

SUHRHEINRICH, Circuit Judge. Defendant Theodore W. Elenniss was charged with and convicted of maintaining a drug-involved premises, 21 U.S.C. § 856, and being a felon in possession of a firearm, 18 U.S.C. § 922(g)(1). Nearly five months after the jury entered a guilty verdict against him, Elenniss sought leave to file a motion for a judgment of acquittal, and, in the alternative, for a new trial. The district court denied leave, holding that the motions were untimely according to the fourteen-day window imposed by Federal Rules of Criminal Procedure 29(c)(1) and 33(b)(2). Because his motions were late, and because his tardiness was not the product of excusable neglect, we affirm.

**I.**

Elenniss lived with his girlfriend, Yvonne Lasser, in Streetsboro, Ohio. Their house was owned by a realty company controlled by Lasser's father. The land on which the house stands—

-1-

all owned by the realty company—is subdivided into a few tracts. On one of those tracts is a large barn in which Elenniss's brother, Benjamin, lived.

In September 2016, the Portage County Drug Task Force received a tip that Elenniss was a major methamphetamine and marijuana dealer. To verify that tip, the police sought to search the contents of a dumpster adjacent to the barn and within the curtilage of the property. The police asked the private trash collection company that emptied the dumpster every week to collect it in an empty truck and dump it somewhere for the police to search. The trash collectors did so, and the police found drug-related evidence. Specifically, they found small plastic bags used to package drugs, hypodermic needles, elastic tie-offs, iodine swabs, and glass pipes, among other paraphernalia. They also found mail addressed to Elenniss. With the tip and this evidence, the police secured a search warrant for the barn, and later, the house.

Upon searching the barn, the police found four large marijuana plants under heat lamps. Upstairs, where Benjamin lived, they found a rifle behind a couch near a wood carving bearing Elenniss's and Lasser's names. In the house's master bedroom (where Elenniss and Lasser slept), officers found a handgun, a small amount of methamphetamine, alcohol swabs and lidocaine (often used for injecting drugs), more small plastic bags, a glass pipe, a spoon, and a beaker. The bedroom also had a safe, in which police found bottles filled with miscellaneous pills and a stack of Elenniss's business cards. Notably, his business cards listed the barn's address as his business address. Near the bed, in plain view, officers found a bullet, drug packaging materials, and a glass pipe. In the house's basement, they discovered a loaded shotgun hidden in the rafters, shotgun shells, ammunition for other firearms, and more drug paraphernalia. They also found digital scales, glass pipes, and other materials commonly used to package and store narcotics. In a desk drawer, police found another stack of Elenniss's business cards with a handgun on top of

them. And, similar to the barn, officers found several marijuana plants under artificial heat lamps. Finally, in a garage attached to the basement, officers found two additional guns and more ammunition locked in a gun safe. On the basis of this evidence, Elenniss was arrested and charged with two counts: maintaining a drug-involved premises and being a felon in possession of a firearm.

Before his trial, Elenniss moved to suppress all of the evidence against him, arguing that it was seized as the result of an unconstitutional search of the dumpster. He claimed that the police had illegally entered the curtilage of his home to empty the dumpster. The district court denied Elenniss's motion because a private company, not the police, had entered the property and hauled away the garbage. After the government presented its evidence at trial, Elenniss's trial counsel moved for a judgment of acquittal on the drug-involved premises charge; he did not make a similar motion for the firearm possession charge. In fact, when asked, he conceded that there was sufficient evidence on the latter charge. That motion was also denied.

For his part, Elenniss's trial counsel called only one witness—Elenniss. After resting his case, he renewed his motion for a judgment of acquittal on the first count, which was again denied. On March 29, 2017, a jury convicted Elenniss on both counts.

About two-and-a-half months later, on June 16, 2017, Elenniss hired a new lawyer, whom the court accepted as a replacement on June 19, 2017. About two months after that, Elenniss's new lawyer sought leave to file a motion for a judgment of acquittal on both charges and an alternative motion for a new trial on the grounds that his trial counsel was ineffective because he had failed to properly investigate the case, had failed to challenge the sufficiency of the evidence on the firearm possession charge, and had failed to properly object to the police search leading to his arrest. He filed those motions (and his request for leave to do so) on August

10, 2017. The district court declined to hear both motions because they were filed after the fourteen-day deadline imposed by Federal Rules of Criminal Procedure 29(c)(1) and 33(b)(2), finding no excusable neglect to justify their tardiness. Nonetheless, the district court issued an alternative ruling denying both motions on their merits. Elenniss was sentenced to eighty-four months' imprisonment with three years of supervised release. He appeals the district court's denial of leave and its denial of his late post-verdict motions.

**II.**

Elenniss argues that the district court erred in denying him leave to file his Rule 29(c) and Rule 33 motions. He urges us to reject that ruling, consider those motions, and grant him a judgment of acquittal; or, at least, a new trial.

We review the district court's denial of leave to file an untimely motion for an abuse of discretion. *United States v. Lewis*, 605 F.3d 395, 401 (6th Cir. 2010). We also review a district court's finding of an absence of excusable neglect for an abuse of discretion. *United States v. Munoz*, 605 F.3d 359, 366 (6th Cir. 2010).

A criminal defendant has fourteen days after his conviction to move for a judgment of acquittal, Fed. R. Crim. P. 29(c)(1), or to move for a new trial, Fed. R. Crim. P. 33(b)(2). However, those deadlines may be extended in cases of "excusable neglect." Fed. R. Crim. P. 45(b)(1)(B). We have adopted the Supreme Court's definition of excusable neglect in the Rule 33 context. *See Munoz*, 605 F.3d at 367-69 (citing *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380 (1993)).[1]

---

[1] While the Sixth Circuit has not yet explicitly applied the *Pioneer* excusable neglect analysis to a late Rule 29 motion, we see no reason not to apply it here. As such, we consider the same factors in addressing both Elenniss's Rule 29 and Rule 33 motions.

The excusable neglect determination is an equitable one and we consider the following non-exhaustive list of factors: "(1) the danger of prejudice to the nonmoving party, (2) the length of the delay and its potential impact on judicial proceedings, (3) the reason for the delay, (4) whether the delay was within the reasonable control of the moving party, and (5) whether the late-filing party acted in good faith." *Id.* at 368 (quoting *Nafziger v. McDermott Int'l, Inc.*, 467 F.3d 514, 522 (6th Cir. 2006)). In balancing these factors, the reason for the delay is given the most weight. *Id.* at 372-73. For that reason, we turn to that factor first.

*Reason for the Delay.* Elenniss had fourteen days to file these motions, but they were not filed until nearly five months after his conviction, making them almost four months late. Typically, we hold clients responsible for their lawyer's mistakes. *See Pioneer*, 507 U.S. at 397 ("[I]n determining whether respondents' failure to file their proofs of claim prior to the bar date was excusable, the proper focus is upon whether the neglect of respondents *and their counsel* was excusable."). But this court has held that "*Pioneer*'s 'your lawyer, your fault' principle should be applied less stringently in the criminal context." *Munoz*, 605 F.3d at 369.

Elenniss contends that he missed the filing deadline because his motions,[2] grounded in a claim that his lawyer was ineffective, needed to be filed by the very counsel about whom he was complaining. In one sense, he is right. Elenniss seeks a new trial under Rule 33 because, he says, his counsel was ineffective in a way that deprived him of his Sixth Amendment right to effective representation. And we have indicated that delays in bringing such claims under these circumstances are excusable. *See id.* at 369 ("[C]ourts have long made special procedural allowances for defendants who fail to timely raise ineffective-assistance-of-counsel claims

---

[2] Throughout his briefing on this issue, Elenniss seems to limit his discussion to only his Rule 33 motion. Periodically, he mentions his Rule 29(c) motion too. Because both motions were late, we treat his arguments in this portion of his brief as relating to both.

against lawyers who continue to represent them at the time those claims would properly have been raised."). In another sense, though, his case presents a situation unique from that in *Munoz*. Here, the district court acknowledged Elenniss's replacement counsel on June 19, 2017. At that point, his motions were more than two months late. Elenniss may have been excused for not filing his motion for a new trial during those two months because he was still represented by the counsel he claims was ineffective. But, as the district court noted, Elenniss waited nearly two months *after* retaining new counsel before filing these motions, and gave the court no indication of his intent to do so in the interim.

True, in *Munoz*, the defendant waited ten weeks after retaining new counsel to file his similar motions. *Id.* at 366. However, Munoz's new lawyer filed a motion for leave to extend that deadline just five days after receiving the case. *Id.* at 365. That put the court on notice that such arguments were in the offing. But the district court was not given the same notice here. Instead, the district court and the government were preparing for sentencing, operating under the impression that all post-verdict motions had come and gone. That assumption was strengthened by the fact that Elenniss's new lawyer filed a motion seeking an extension to object to the pre-sentencing report shortly after taking over the case. This suggested to the district court that Elenniss and his new attorney were preparing for sentencing. No hint was given that they were preparing these post-verdict motions. That distinguishes this case from *Munoz* and undermines Elenniss's claims of excusable neglect. And we do not overlook the fact that Elenniss's new counsel would have needed time to familiarize himself with the case and to develop those motions—he nonetheless could have sought leave to file those motions late shortly after taking the case. Under these facts, this factor does not clearly weigh in Elenniss's favor.

Elenniss's justification for the delay in filing his Rule 29(c) motion is even weaker. This motion, filed nearly five months after his conviction, emanated not from his attorney's poor representation, but from a purported insufficiency in the government's evidence. Unlike with his Rule 33 motion, then, Elenniss lacks the excuse that his attorney should not have been expected to file the motion. Both his first and second attorneys could have challenged the sufficiency of the evidence, and both of their failures to do so in a timely fashion is attributable to Elenniss. *See Pioneer*, 507 U.S. at 397. This motion could have been brought within the fourteen-day window. And it certainly could have been brought sooner than two months after Elenniss retained new counsel. Thus, with respect to his Rule 29(c) motion, the first—and critical—factor does not weigh in Elenniss's favor.

*Whether the Delay Was Within Elenniss's Control.* As discussed above, Elenniss should not be punished for his lawyer's failure to file a motion rooted in his own ineffectiveness. That delay—the first two months—was at least somewhat[3] outside of his control. The subsequent two-month delay, though, was not. Nor was any delay in seeking a judgment of acquittal under Rule 29(c), which was independent of his first lawyer's alleged ineffectiveness. This factor does not weigh in Elenniss's favor.

*Prejudice to the Government.* The district court indicated that the government was induced into misallocating resources—towards sentencing considerations rather than towards responding to Elenniss's post-verdict motions—because of Elenniss's delay. But when addressing delays of this nature, we consider what prejudice the government experienced *as a result of* that delay. *Munoz*, 605 F.3d at 371. In this case, the government was required to allocate resources to respond to Elenniss's motions and to prepare for Elenniss's sentencing. But it would

---

[3] Indeed, Elenniss could have recognized his trial counsel's deficient performance and hired a new attorney sooner. Nonetheless, that does not control the outcome here.

have done the same had Elenniss filed these motions on time, albeit in a different order. That is particularly true here, where the district court denied those motions and proceeded immediately to sentencing. Thus, the delay in Elenniss's motions did not *add* any burden that would not have existed in the event of a timely filing. This factor favors Elenniss.

*Length of Delay and Its Impact on Judicial Proceedings.* Determining whether a delay is "inordinate" is context-dependent. *See id.* at 372. As explained above, Elenniss had two weeks to file his Rule 29(c)[4] and Rule 33 motions after his verdict was rendered on March 29, 2017. Two months after the two-week deadline passed, he hired a new attorney. Another two months after that, he filed his post-verdict motions, making them nearly four months late.

As noted, in *Munoz*, we held that a ten-week delay was not inordinately long after Munoz's new attorney sought leave to file a late Rule 33 motion five days after receiving the case. Because of the often time-consuming and sensitive nature of ineffective assistance of counsel claims, we held that it was not unreasonable to take ten weeks to prepare such a motion. *Id.* However, we also noted that "a district judge is in the best position to know how long a diligent successor counsel would require to research and prepare a new-trial motion under the circumstances presented by any given case." *Id.* Here, the delay in actually filing the motion (after getting new counsel) was shorter than that in *Munoz*. However, Elenniss's second lawyer failed to request leave to file a late motion in a timely manner, as Munoz's lawyer did. Plus, the district court, who is in the best position to appreciate what amounts to an "inordinately" long delay, proclaimed this to be one. The district court also pointed out that it was "lulled" into misallocating its resources because of the lengthy delay and lack of notice. Even more so here,

---

[4] While Elenniss did timely file a Rule 29(a) motion on the drug charge during the trial below, that filing does not render his Rule 29(c) motion timely. These two motions are treated as distinct filings. *See* 4 Orfield, Criminal Procedure Under the Rules, § 29:17 (2017).

where Elenniss's second attorney filed motions related to sentencing only eleven days after receiving the case. On balance, this factor does not clearly support Elenniss.

*Good Faith.* The district court held that Elenniss did not file his motions in good faith. It reasoned that Elenniss had already presented, and the court had already rejected, his Rule 29 motions. That, according to the district court, amounted to bad faith. We disagree.

It is true that Elenniss's Rule 29(c) motion restated arguments made during the course of trial. But that is not unusual, and certainly not bad faith—Rule 29(c) contemplates renewing motions for a judgment of acquittal made during the course of a trial. *See* Fed. R. Crim. P. 29(c)(1). That Elenniss's arguments reiterated points made previously cannot serve as the basis for a finding of bad faith. *See generally Bad Faith*, Black's Law Dictionary (10th ed. 2014) (defining bad faith as "[d]ishonesty of belief, purpose, or motive"). And Elenniss had not yet presented his Rule 29 motion with respect to the gun charge. Indeed, he waived it below.[5]

As to Elenniss's Rule 33 motion for a new trial, the district court was even less clear on its finding of bad faith. Elenniss based this motion on two things: newly discovered evidence[6] and ineffective assistance of counsel. The district court held that this motion was filed in bad faith for two reasons. First, it held that it had already issued its ruling on a key part of Elenniss's motion. Elenniss argued that his first attorney was ineffective because his motion to suppress evidence pulled from his trash was inadequate. The district court, having held that the trash search was permissible, considered this motion duplicative. Second, the district court felt

---

[5] Perhaps bringing a motion that had been previously waived could support an argument of bad faith; but, no party has made that point here. In any event, given the fact that the motion was filed by new counsel, we would not be inclined to find bad faith.

[6] The newly discovered evidence was a handwritten letter from Elenniss's brother, allegedly written after the trial. Elenniss has failed to present any argument related to this evidence, and has thus forfeited any such arguments here. *See McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997).

Elenniss's motion lacked merit. This, however, does not amount to bad faith. Elenniss's motion for a new trial and the grounds on which it was brought had never been made, heard, or decided prior to this filing. Aside from its tardiness, Elenniss had every right to file this motion. Thus, this factor weighs in Elenniss's favor.

*Balancing the* Pioneer *Factors.* On balance, we cannot say that the district court abused its discretion. The most critical of the *Pioneer* factors—the reason for the delay—suggests that Elenniss was not justified in his lateness. And while some of the other factors may weigh in his favor—indeed, more so than the district court suggested—they cannot displace that glaring deficiency. The burden is on Elenniss and he simply failed to offer an adequate explanation for the delay. For that reason, the district court did not err in denying Elenniss leave to file these motions.

### III.

Rules 29 and 33 of the Federal Rules of Criminal Procedure seek to promote finality by creating a bright-line rule: defendants must file their motions within fourteen days or they will be lost. *See* Fed. R. Crim. P. 29, 33 advisory committee's note to 2005 amendments. Moreover, prompt filing of these motions allows for the presiding judge to rule on them while the evidence is still fresh in her mind. The only exception to this bright-line rule comes in the case of excusable neglect. But without a finding of excusable neglect, the time limits should be enforced and the motions forfeited. Nonetheless, we turn briefly to the substance of Elenniss's motions because they are clearly without merit and doing so may facilitate future proceedings.

*Judgment of Acquittal—Maintaining a Drug-Involved Premises.* Elenniss claims, via Rule 29(c), that his conviction was not supported by sufficient evidence. We review the district court's denial of a Rule 29(c) motion de novo. *United States v. Howard*, 621 F.3d 433, 459 (6th

Cir. 2010). We must ask whether "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). We review the evidence in the light most favorable to the prosecution and make all inferences and credibility determinations in the verdict's favor. *Id.*; *see also United States v. Avery*, 128 F.3d 966, 971 (6th Cir. 1997).

To support a conviction for maintaining a drug-involved premises, the government must show that Elenniss "knowingly open[ed], lease[d], rent[ed], use[d], or maintain[ed] any place, whether permanently or temporarily, for the purpose of manufacturing, distributing, or using any controlled substance." 21 U.S.C. § 856(a)(1).

The district court held that there was sufficient evidence to support a conviction on this count. We agree. Elenniss challenges two components of his conviction: that he kept his house "for the purpose of" drug-related activity and that he "maintained" the barn.

First, there was evidence that Elenniss maintained the house, at least in part, for the purpose of drug-related activities. The drug-related uses of the premises must have been at least "significant or important." *United States v. Russell*, 595 F.3d 633, 643 (6th Cir. 2010). While "casual" drug use does not amount to a violation of this statute, *id.* at 642-43, there is evidence that Elenniss used the property for more widespread drug-use, as well as to manufacture and distribute drugs.

To begin, it is undeniable that the house was used to manufacture marijuana—the police found marijuana plants in the basement underneath artificial heat lamps. And while Elenniss denied knowledge of those plants, we will not second-guess the jury's credibility determination

about his testimony.[7] *See Tanner v. Yukins*, 867 F.3d 661, 673 (6th Cir. 2017). Officers also found evidence commonly suggesting drug distribution in the house, such as small plastic bags used to store drugs and digital scales used to weigh them. Finally, there was plenty of evidence of drug use in the house, including, but not limited to, bottles of miscellaneous pills, small amounts of methamphetamine, multiple glass pipes, and items commonly used for injecting drugs. With all of this evidence, it was reasonable for the jury to conclude that Elenniss used the property for drug-related purposes.

Second, the government introduced sufficient evidence to show that Elenniss "maintained" the barn. This element does not require that Elenniss own or lease the barn. *Russell*, 595 F.3d at 644. Rather, "[a]cts that evidence 'maintenance' are 'such matters as control, duration, acquisition of the site, renting or furnishing the site, repairing the site, supervising, protecting, supplying food to those at the site, and [maintaining] continuity.'" *Id.* (quoting *United States v. Clavis*, 956 F.2d 1079, 1091 (11th Cir. 1992)).

Many pieces of evidence suggest that Elenniss "maintained" the barn. To name just a few: Elenniss's personal mail was discovered in the dumpster adjacent to the barn, Elenniss's business cards used the barn's address, Elenniss gave permission to his brother to live in the barn indicating some level of dominion, Elenniss used the barn for storage, and carvings in the barn wall bore Elenniss's and Lasser's names, along with the dates 2014 and 2015, suggesting continuity. We are satisfied that this evidence could allow a juror to reasonably find him to have "maintained" the barn.

---

[7] Particularly here, where Elenniss blamed the presence of various items throughout the house on a "genie."

Accordingly, even though this motion for a judgment of acquittal is barred because it was late, it would make no difference had it been filed on time. The government presented sufficient evidence to support this conviction.

*Judgment of Acquittal—Felon in Possession of a Firearm.* Because Elenniss chose not to challenge the sufficiency of the evidence as to the firearm possession charge, he has forfeited his right to bring that challenge now. *United States v. Mize*, 814 F.3d 401, 408 (6th Cir. 2016); *United States v. Faymore*, 736 F.2d 328, 334 (6th Cir. 1984). Instead, we review the district court's denial of this motion only to ensure that there has been no "miscarriage of justice." *Mize*, 814 F.3d at 408. And there has been none here.

Elenniss challenges only one component of this charge—he claims that he did not "possess" any firearm. *See United States v. Grubbs*, 506 F.3d 434, 439 (6th Cir. 2007). The government presented a theory of constructive possession (and, indeed, an instruction), which exists where a person "knowingly has the power and the intention at a given time to exercise dominion and control over [a firearm], either directly or through others." *United States v. Bailey*, 553 F.3d 940, 944 (6th Cir. 2009) (emphasis omitted) (quoting *United States v. Craven*, 478 F.2d 1329, 1333 (6th Cir. 1973)). And "[p]roof that the person has dominion over the premises where the firearm is located" may support a finding of constructive possession. *United States v. Hadley*, 431 F.3d 484, 516 (6th Cir. 2005) (quoting *United States v. Kincaide*, 145 F.3d 771, 782 (6th Cir. 1998)).

As noted above, Elenniss had dominion over both the residence and the barn, where numerous guns were found. Moreover, police officers found evidence tying Elenniss to many of the firearms. For example, in the house's basement, they found a handgun in a desk drawer sitting on top of a stack of Elenniss's business cards. Plus, police found a gun in Elenniss's and

Lasser's nightstand. *See Hadley*, 431 F.3d at 507 (a firearm seized from defendant's armoire supported a finding of constructive possession); *United States v. Layne*, 192 F.3d 556, 572 (6th Cir. 1999) (a firearm seized from a dresser near defendant's bed supported a finding of constructive possession); *United States v. Bingham*, 81 F.3d 617, 633-34 (6th Cir. 1996) (a firearm seized from defendant's closet supported a finding of constructive possession). Elenniss also admitted that he lived in the house and slept in the master bedroom. He also used the barn's address as his business address. In short, there was strong evidence to support a finding of constructive possession. Because there was evidence to support this conviction, there has been no miscarriage of justice.

*New Trial—Ineffective Assistance of Counsel.* Elenniss claims that his trial counsel failed to properly investigate and try his case, and that as a result, he should receive a new trial. But this is not the proper forum for those claims. His allegations are the sort suited for habeas relief under 28 U.S.C. § 2255, rather than on direct appeal. *See Massaro v. United States*, 538 U.S. 500, 504 (2003); *see also United States v. Martinez*, 430 F.3d 317, 338 (6th Cir. 2005) (abiding by the "general rule . . . [that] a defendant may not raise ineffective assistance of counsel claims for the first time on direct appeal, since there has not been an opportunity to develop and include in the record evidence bearing on the merits of the allegations" (quoting *United States v. Wunder*, 919 F.2d 34, 37 (6th Cir. 1990))).

## IV.

For these reasons, we find that Elenniss's motions were untimely and that their tardiness is unexcused. Even considering the merits of those motions, though, they fail. As such, we AFFIRM.