NOT RECOMMENDED FOR PUBLICATION
File Name: 24a0033n.06

Case No. 23-5473

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

FILED
Jan 25, 2024
KELLY L. STEPHENS, Clerk

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| v. | ) | STATES DISTRICT COURT FOR |
| | ) | THE WESTERN DISTRICT OF |
| GREGORY TAYLOR, | ) | TENNESSEE |
| Defendant-Appellant. | ) | OPINION |
| | ) | |

Before: GIBBONS, WHITE, and THAPAR, Circuit Judges.

THAPAR, Circuit Judge. After Gregory Taylor sold drugs to Gabriel Monske, Monske overdosed and died. A jury convicted Taylor of distributing heroin and fentanyl, and the district court gave Taylor a below-Guidelines sentence. Taylor appeals, challenging the evidence used at trial, the jury's verdict, and the reasonableness of his sentence. We affirm.

I.

After Gabriel Monske got a job offer, he set out to buy heroin to celebrate with his friends.

To get the drugs, Monske texted Gregory Taylor. This wasn't their first interaction. Taylor was listed in Monske's phone as "Gino heroin" and "Gino H." Taylor had sold Monske around $1,000 worth of heroin in the past. And, in fact, Taylor had already sold Monske heroin twice that week. Upset that Taylor's heroin wasn't strong enough, Monske had asked for "China White," which can refer to strong heroin or fentanyl. Taylor promised to provide a stronger drug. On the

night of the celebration, Monske repeated that he wanted the "same [stuff]" or "stronger." Taylor obliged and drove to the house where Monske rented a room.

When Taylor arrived, Monske got into his car. Monske asked one of his friends, Alexis Warren, to join them. Warren observed Taylor get out of his car, retrieve something from the trunk, and return, giving the item to Monske. Warren then watched Monske and Taylor haggle over a price, exchange money, and discuss how Monske should hide the item in case police stopped him.

Right after Taylor drove off, Monske went into the house. Warren waited outside. When Monske returned, Warren noticed that Monske began acting "real weird." R. 150, Pg. ID 995. His responses slowed, and he eventually slumped over, pale and nonresponsive. Scared, Warren rushed Monske to a friend's house, where a shaky and sweaty Monske was dragged inside. The friends concluded that Monske was on drugs and helped him slowly recover.

Once Monske recovered, the group returned to the house where he rented a room. There, Monske prepared lines of heroin, which he, his friend, and his landlady snorted. Monske told his friend he'd purchased the heroin earlier that day.

After ingesting several lines, Monske passed out and then vomited. Suspecting Monske had overdosed, his landlady called 911. Paramedics rushed to the scene, but it was too late: Monske was dead.

A responding paramedic thought opioids caused Monske's death because Monske's pupils were constricted. The state medical examiner conducted an autopsy. As part of the autopsy, the examiner asked National Medical Services Laboratories—a private laboratory the examiner often used for toxicology services—to test Monske's bodily fluids for drugs. In the fluids, NMS found

large quantities of heroin and fentanyl breakdown products. Based on NMS's report, the state medical examiner concluded that Monske overdosed on heroin and fentanyl.

The government charged Taylor with distributing heroin and distributing a mixture of heroin and fentanyl, which resulted in Monske's death. *See* 21 U.S.C. § 841(a)(1). A jury found Taylor guilty of distributing heroin and a mixture of heroin and fentanyl, but not causing Monske's death. At sentencing, the district court calculated Taylor's Guidelines range at 210 to 262 months' imprisonment. Taylor did not object to the Guidelines range but asked the court to depart and vary to a lower sentence. The district court varied downward, sentencing Taylor to 180 months. Taylor appeals, challenging the evidence introduced at trial, the jury's verdict, and the reasonableness of his sentence.

II.

At Taylor's trial, the government introduced the NMS Report—which found breakdown products of heroin and fentanyl in Monske's fluids—to prove that Taylor sold those drugs. Taylor claims that violated his Sixth Amendment right "to be confronted with the witnesses against him." U.S. Const. amend. VI.

"Witnesses" are "those who 'bear testimony'" against a defendant. *Crawford v. Washington*, 541 U.S. 36, 51 (2004) (citation omitted). So, the Sixth Amendment prevents the government from using "testimonial" statements at trial unless the defendant has an opportunity to cross-examine (i.e., "confront") the "witness who made the statement." *Bullcoming v. New Mexico*, 564 U.S. 647, 657 (2011). Taylor's Sixth Amendment challenge thus raises two questions: Was the NMS Report testimonial? And did Taylor have an opportunity to cross-examine the witness who made it?

Whether or not the NMS Report is testimonial, Taylor had an opportunity to cross-examine the witness who made it: Dr. Lamb. After NMS received samples of Monske's fluids, more than ten analysts tested the fluids, entered results into a computer, and reviewed those results for error. Then, "all of the information" handled by the analysts went to Dr. Lamb. R. 151, Pg. ID 1197. Dr. Lamb reviewed the same data used by the analysts, compared test results, and came to his "own conclusions" about the information ultimately included in the Report. *Id.* at 1173, 1186, 1197. Finally, Dr. Lamb compiled the Report, signed it, and certified that the tests conformed to NMS standards.

At trial, Dr. Lamb introduced the Report, and Taylor cross-examined him about his role in producing the Report and its findings. Thus, Taylor had an opportunity to confront the witness who compiled the Report, signed the Report, and certified that its findings were valid. In other words, he confronted the "witness who made the statement" against him. *Bullcoming*, 564 U.S. at 657. The Sixth Amendment requires no more. *Id.*

Arguing otherwise, Taylor notes that Dr. Lamb didn't personally perform any tests on Monske's fluids. And, citing *Bullcoming v. New Mexico*, he argues the Sixth Amendment guarantees him the right to cross-examine the analysts who did. *See id.* at 651.

But the Confrontation Clause doesn't give Taylor a right to cross-examine "anyone whose testimony may be relevant" in establishing the accuracy of the tests. *Melendez-Diaz v. Massachusetts*, 557 U.S. 305, 311 n.1 (2009). Nor does the Clause create a best-witness rule, requiring the most knowledgeable or reliable analyst to appear. *See Crawford*, 541 U.S. at 62; *cf. Bullcoming*, 564 U.S. at 672 (Sotomayor, J., concurring in part) ("[T]his is not a case in which the person testifying is a supervisor, reviewer, or someone else with a personal, albeit limited,

connection to the scientific test at issue."). Instead, it gives Taylor the right to cross-examine the "witness" who, through the Report, "bear[s] testimony" against him. *Crawford*, 541 U.S. at 51.

And the Report is Dr. Lamb's testimony, not the analysts'. None of the analysts compiled the Report. None of the analysts are identified on the Report, and only Dr. Lamb signed it. Finally, none of the analysts certified that the test results complied with NMS standards. Thus, it's Dr. Lamb—not the analysts—who "bear[s] testimony" that Monske's fluids contained lethal quantities of heroin and fentanyl breakdown products. *Id.*

To be sure, if Dr. Lamb merely parroted the analysts' testimony, the Confrontation Clause might give Taylor a right to cross-examine the analysts. *Bullcoming*, 564 U.S. at 652 (noting "surrogate testimony" does not satisfy the Confrontation Clause); *Davis v. Washington*, 547 U.S. 813, 826 (2006) (similar). But the Report contains Dr. Lamb's "own conclusions" that he formed after his own, independent review of the data. R. 151, Pg. ID 1197. Taylor thus has no Sixth Amendment right to cross-examine the analysts. *See United States v. Miller*, 982 F.3d 412, 437 (6th Cir. 2020) (noting there's no right to cross-examine an analyst who "was not the 'speaker' who made the statements").

*Bullcoming v. New Mexico* is not to the contrary. In that case, a scientist certified that a lab report quantifying the defendant's blood-alcohol content was valid. 564 U.S. at 651. The government introduced the report at trial, and the Court treated the scientist's certification as testimonial. *Id.* at 657–59. But instead of having the certifying scientist testify at trial, the government called an analyst who "did not sign the certification or personally perform or observe the performance of the test reported in the certification" and was merely "familiar with the laboratory's testing procedures." *Id.* at 651, 657; *see also id.* at 673 (Sotomayor, J., concurring in part) (noting the testifying analyst "had no involvement whatsoever in the relevant test and

report"). The Court held that violated the Confrontation Clause. *Id.* at 657 (majority op.). That made sense: the certifying scientist—not the testifying analyst—was "the witness who made the [testimonial] statement" at issue. *Id.*

Here, by contrast, the government introduced the Report through the witness who made it. Again, the Report contains Dr. Lamb's own conclusions, Dr. Lamb is the one who compiled the Report, he's the only one who signed it, and he's the one who certified its findings. And Taylor had an opportunity to confront him. That is all the Sixth Amendment requires.

III.

Taylor next claims the jury didn't have sufficient evidence to find that he sold Monske a mixture of heroin and fentanyl. On this claim, Taylor faces an uphill battle. *See James v. Corrigan*, 85 F.4th 392, 395 (6th Cir. 2023). Out of respect for the jury's role in our system, our review of its verdict is limited. We construe evidence in the verdict's favor and ask whether, considering all the evidence, any rational juror could have found Taylor guilty of selling heroin and fentanyl beyond a reasonable doubt. *United States v. Avery*, 128 F.3d 966, 971 (6th Cir. 1997).

Abundant evidence supports the jury's finding. In his phone, Monske listed Taylor as "Gino heroin" and "Gino H," and Monske's messages indicated that Taylor had sold him about $1,000 in heroin.

On the day of his death, Monske told his friend he'd purchase heroin and then texted Taylor, asking for the "same [stuff]" or "stronger." R. 151, Pg. ID 1225 (spelling normalized). Warren watched Taylor sell Monske what she later concluded was heroin. Immediately after, Monske disappeared into his room and soon started showing signs of heroin use. That night, Monske snorted heroin that he said he purchased earlier that day. A responding paramedic thought

opioids caused Monske's death. And the state medical examiner concluded that Monske died from ingesting lethal amounts of heroin and fentanyl.

Based on this evidence, a reasonable juror could conclude that Taylor sold Monske heroin and fentanyl.

In response, Taylor argues there's no physical evidence that he sold Monske those drugs. But circumstantial evidence "on its own" can sustain a verdict. *Avery*, 128 F.3d at 971.

Taylor also posits that a jury shouldn't have trusted Monske's friends and landlady because they initially lied to the police, telling them they hadn't done heroin with Monske. Similarly, Taylor argues it's possible that someone else—one of Monske's friends perhaps—brought the heroin that Monske ingested. Yet, for purposes of an insufficiency-of-the-evidence claim, we resolve all inferences and issues of credibility in the verdict's favor. *Id.* Taylor can't prevail by arguing that he would have weighed the evidence differently than the jury.

IV.

Next, Taylor raises two challenges to the procedural reasonableness of his sentence. First, he alleges the district court didn't consider one of his arguments. When sentencing Taylor, the district court started with an enhanced Guidelines range because Taylor had two prior drug convictions. *See* U.S.S.G. § 4B1.1(b)(2). Taylor thought it was unfair to count those convictions separately because they were resolved on the same day. So, he argued his Guidelines range overstated his criminal history, and he asked the court to depart and vary downward from that range.

Though district courts need not explain why they reject every argument, they should "listen[] to each argument" and "consider[]" the supporting evidence. *United States v. Vonner*, 516 F.3d 382, 387 (6th Cir. 2008) (en banc) (quoting *Rita v. United States*, 551 U.S. 338, 358

(2007)). Here, the district court did just that. It listened to Taylor's argument and, throughout sentencing, repeatedly referenced it, noting Taylor's criminal history was higher because of "the way [his prior] convictions were counted." R. 147, Pg. ID 745–46. The court ultimately confirmed that the sentence was based on the "position of the parties" and on "their arguments." *Id.* at 743. And most importantly, the court *credited* Taylor's argument, varying downward because Taylor's "criminal history and the career criminal status is overstated." *Id.* at 746. It's hard to imagine clearer proof that the district court "listened" to Taylor's argument and "considered" the supporting evidence. *See Vonner*, 516 F.3d at 387 (quotation omitted).

Second, Taylor claims his sentence is procedurally unreasonable because the court based the sentence on a clearly erroneous fact. *See United States v. Brinley*, 684 F.3d 629, 633 (6th Cir. 2012). When discussing the need to deter Taylor from committing further drug offenses, the court noted Taylor was "a very comfortable drug dealer" who repeatedly sold drugs. R. 147, Pg. ID 745, 748–49. Taylor claims there's no evidence he sold Monske drugs on more than three occasions.

But three sales are enough for the district court to conclude that Taylor was a repeat drug dealer. Regardless, there's evidence Taylor sold drugs more than three times. In addition to the three sales Taylor concedes occurred—each valued around $90—Taylor sold Monske about $1,000 in heroin. And Taylor had two prior convictions for selling cocaine. Thus, the district court didn't clearly err when it recognized Taylor repeatedly sold drugs.

V.

Finally, Taylor claims his sentence is substantively unreasonable—i.e., too long. Because the district court gave Taylor a sentence below the Guidelines range, we presume otherwise. *United States v. Skouteris*, 51 F.4th 658, 674 (6th Cir. 2022). To rebut that presumption, Taylor

must show the district court gave "an unreasonable amount of weight" to a sentencing factor. *United States v. Mahbub*, 818 F.3d 213, 232 (6th Cir. 2016) (quotation omitted).

Taylor first argues the district court placed too much emphasis on the seriousness of his crimes. The district court found that Taylor's crimes were "extremely serious" because heroin and fentanyl are dangerous drugs. R. 147, Pg. ID 744–45. That's a reasonable finding. *See United States v. Ford*, 724 F. App'x 428, 433–34 (6th Cir. 2018). Indeed, as the district court noted, those drugs caused a death in this case. Though the jury didn't find that Taylor caused Monske's death, the district court was free to treat Monske's heroin and fentanyl overdose as evidence that Taylor's crimes were serious. *See id.* at 436; *see also United States v. Kosinski*, 480 F.3d 769, 775, 777 (6th Cir. 2007) (noting a district court may enhance a defendant's sentence "based on factors not proven to a jury or admitted by a defendant" if they are "based on reliable information and supported by a preponderance of the evidence").

Taylor also alleges the district court placed undue weight on his criminal history. Specifically, because his prior drug offenses were nonviolent, Taylor argues his initial Guidelines range overstated his criminal history. But while the district court was free to vary from the Guidelines range on that basis, it wasn't required to do so. *See United States v. Kennedy*, 65 F.4th 314, 326 (6th Cir. 2023). Regardless, the district court did vary down from the Guidelines range— because it thought that range overemphasized Taylor's criminal history. That Taylor would have varied further doesn't make his sentence unreasonable.

\*      \*      \*

We affirm.